Previn Warren
Abigail Burman
401 9th Street NW Suite 630
Washington DC 20004
Tel: 202-386-9610
pwarren@motleyrice.com
aburman@motleyrice.com

*Attorneys for Plaintiffs*
Additional counsel on signature page.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| E.H. and C.S., *on behalf of themselves and all others similarly situated*,<br><br>  Plaintiffs,<br><br>   v.<br><br>META PLATFORMS, INC.,<br>   Defendant. | Case No. 3:23-cv-04784-WHO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Action Filed: September 18, 2023<br><br>Honorable Judge William H. Orrick |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – CASE NO. 3:23-CV-04784-WHO

# Contents

Introduction ........................................................................................................................... 1

Background ............................................................................................................................ 1

Legal Standard ...................................................................................................................... 3

Argument .............................................................................................................................. 3

    I.    Invasion of Privacy ................................................................................................. 3

    II.    UCL and CLRA ...................................................................................................... 4

        A.    Plaintiffs' economic injuries give them standing under the UCL and CLRA. ................. 4

        B.    Plaintiffs' UCL fraud allegations and CLRA allegation comply with Rule 9(b). ............ 7

        C.    Meta's conduct was unfair. ................................................................................ 10

        D.    Plaintiffs are "consumers" as defined by the CLRA. ......................................... 12

    III.    Conversion ........................................................................................................... 14

        A.    Meta converted Plaintiffs' property. ................................................................... 14

        B.    Meta's conversion injured Plaintiffs, entitling them to statutory damages. ..................... 17

Conclusion .......................................................................................................................... 19

# Table of Authorities

## Cases

*A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 570 (Cal. Ct. App. 1977) .............................. 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 3

*Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078 (E.D. Cal. 2006) ..... 5

*Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846 (9th Cir. 2012) .......................................................... 5

*Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255 (Cal. Ct. App. 2006) .............................. 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 3

*Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012) ...................... 5

*Burlesci v. Petersen*, 68 Cal. App. 4th 1062 (Cal. Ct. App. 1998) ................................................. 14

*Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014) ................................................. 6

*Chamberlan v. Ford Motor Co.*, No. C 03–2628 CW, 2003 WL 25751413 (N.D. Cal. Aug. 6, 2003) ................................................................................................................. 13

*City and Cnty. Of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610 (N.D. Cal. 2020) .... 6

*Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011) ................................................ 13

*DirecTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182 (E.D. Cal. 2005) ................................................. 14

*Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204 (9th Cir. 2020) ......................................................... 11

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (Cal. Ct. App. 2010) .......................................... 7

*eBay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000).................................................. 15

*Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843 (N.D. Cal. 2012) ............................................. 12

*Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023).............................................................. 10

*Ferrington v. McAfee, Inc.*, No. 10–CV–01455–LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) 6

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 9 F.4th 1167 (9th Cir. 2021)......................................... 17

*FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300 (7th Cir. 1990)............................................... 16

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896 (9th Cir. 1992) 15, 16, 17

*Gardner v. Health Net, Inc.*, No. CV 10-2140 PA (CWx), 2010 WL 11597979 (C.D. Cal. Aug. 12, 2010) ..................................................................................................................................................... 8

*Gonzales v. Personal Storage, Inc.*, 56 Cal. App. 4th 464 (Cal. Ct. App. 1997) ............................... 18

*Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592 (N.D. Cal. 2021) .......................................... 6

*Hartford Fin. Corp. v. Burns*, 96 Cal. App. 3d 591 (Cal. Ct. App. 1979)......................................... 15

*Haskins v. Symantec Corp.*, 654 F. App'x 338 (9th Cir. 2016) ............................................................ 8

*Hernandez v. Path, Inc.*, No. 12–CV–01515 YGR, 2012 WL 5194120, (N.D. Cal. Oct. 19, 2012). 16

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013)........................................................................ 4

*In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014).................................... 11

*In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016) ........................ 8, 10, 11

*In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ............................................................................................................................................. 7

*In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d, 434 (N.D. Cal. 2018) ........................ 8

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015)........................................... 9, 10, 11, 12

*In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ..................................... 19

*In re Facebook PPC Advertising Litig*, Nos. 5:09–cv–03043–JF, 5:09–cv–03519–JF, 5:09–cv–03430–JF, 2010 WL 3341062 (N.D. Cal. Aug. 25, 2010).............................................................. 9

*In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011)............................................... 13

*In re Intel Corp. CPU Mktg., Sales Practices and Prods. Liab. Litig.*, No. 22-35652, 2023 WL 7211394 (9th Cir. Nov. 2, 2023)................................................................................................... 11

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.* 440 F. Supp. 3d 447 (D. Md. 2020) ..... 5

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................. 11, 17

*In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ............................................................................................................................... 4, 6, 17

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-CV-2284-H-KSC, 2020 WL 2214152 (S.D. Cal. May 7, 2020) .................................................................................. 5

*In re Zoom Video Commc'ns Inc. Privacy Litigation*, 525 F. Supp. 3d 1017 (N.D. Cal. 2021) 7, 8, 12

*Intel Corporation v. Hamidi*, 30 Cal.4th 1342 (Cal. 2003) ................................................................. 17

*Katz-Lacabe v. Oracle Am., Inc.*, No. 22-cv-04792-RS, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ................................................................................................................................................. 6

*Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877 (N.D. Cal. 2022) ....................................................... 10

*Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) ............................................................................. 15

*Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310 (Cal. 2011) ............................................................. 5, 19

*LaCourt v. Specific Media, Inc.*, No. SACV 10–1256–GW(JCGx), 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ................................................................................................................................ 18

*Leflore v. Los Angeles County Metropolitan Transportation Agency*, No. B18465, 2006 WL 2677862 ( Cal Ct. App. Sept. 9, 2006) .............................................................................................. 16

*Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718 (9th Cir. 1984) ..................... 17

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................... 18

*Low v. LinkedIn Corp.*, No. 11–CV–01468–LH, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ..... 18

*Lueter v. State.*, 94 Cal. App. 4th 1285 (Cal. Ct. App. 2002) ........................................................... 18

*Macdonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087 (N.D. Cal. 2014) ..................................... 8, 9, 10

*Makaeff v. Trump Univ., LLC*, 145 F. Supp. 3d 962 (S.D. Cal. 2015) ............................................... 13

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) ............................. 3, 14

*Mirkin v. Wasserman*, 5 Cal.4th 1082 (Cal. 1993) ............................................................................. 9

*Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515 (Cal. Ct. App. 2022) .................. 5, 6, 18

*Opperman v. Path*, Inc., 84 F. Supp. 3d 962 (N.D. Cal. 2015) ......................................................... 18

*Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...................................................... 8

*Philips v. Ford Motor Co.*, No. 14–CV–02989–LHK, 2015 WL 4111448 (N.D. Cal. Jul. 7 2015) . 13

*Phillips v. Davis*, No. B215288, 2010 WL 3128362 (Cal. Ct. App. Aug. 10, 2010) ......................... 16

*Pillsbury, Madison & Sutro v. Schectman*, 55 Cal. App. 4th 1279 (Cal. Ct. App. 1997) .................. 16

*Planned Parenthood Los Angeles v. Gonzalez*, No. B190490, 2007 WL 1087292, *11 (Cal. Ct. App. Apr. 12, 2007) ................................................................................................................................. 16

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – CASE NO. 3:23-CV-04784-WHO

*Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613 (9th Cir. 2021)....................................6

*Rossi v. Whirlpool Corp.*, No. 2:12–cv–00125, 2013 WL 5781673 (N.D. Cal. Oct. 25, 2013)........13

*Shersher v. Super. Ct.*, 154 Cal. App. 4th 1491 (Cal. Ct. App. 2007)..................................................6

*Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840 (N.D. Cal. 2018)................................................9, 10

*Song Fi, Inc. v. Google, Inc.*, 2016 WL 1298999 (N.D. Cal. Apr. 4, 2016).....................................13

*Sydney Ji v. Naver Corp.*, No. 21-cv-05143-HS, 2023 WL 6466211 (N.D. Cal. Oct. 3, 2023)........17

*Thrifty–Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559 (Cal. Ct. App. 1996) ........................................16

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .........................................................7

*VSS Emultech v. Crenshaw*, No. C049676, 2006 WL 2411454 (Cal. Ct. App. Aug. 22, 2006) .......16

*Wesch v. Yodlee, Inc.*, No. 20-cv-05991-SK, 2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) .............6

*White v. Molfetta*, 64 Cal. App. 5th 628 (Cal. Ct. App. 2021) ...........................................................18

*Yahoo! Inc. Customer Data Sec. Breach Litig.*, Case No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017).................................................................................................9, 13

**Statutes**

Cal. Bus. & Prof. Code § 17200 .........................................................................................................7

Cal. Civ. Code § 1760........................................................................................................................12

Cal. Civ. Code § 1761........................................................................................................................13

Cal. Civ. Code § 1770........................................................................................................................12

Cal. Civ. Code § 3363........................................................................................................................18

**Other Authorities**

Respondent-Defendant's Brief, *Phillips v. Davis*, 2010 WL 1422945 (Mar. 12, 2010) ...................16

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – CASE NO. 3:23-CV-04784-WHO

**Introduction**

Meta Platforms, Inc. ("Meta" or "Defendant") has filed a copycat motion in response to a complaint that is anything but. Plaintiffs filed this case to challenge Meta's use of its Pixel to intercept identifiable, highly sensitive, and legally protected health information of people who do *not* have Facebook accounts—in many cases because they wanted to avoid precisely the sort of surveillance in which Meta has engaged. For nearly two decades, Meta, hellbent on mining any and all personal information from not only its users but the entire world, has tried to convince the public that nothing can ever be truly private. But Plaintiffs disagree. So does the law.

Meta's illicit acquisition and handling of Plaintiffs' and Class Members' protected health information violated state and federal wiretapping laws, invaded Plaintiffs' and Class Members' privacy, unlawfully converted Plaintiffs' and Class Members' health care data, unjustly enriched Meta, and was unfair, unjust, and unlawful. Moreover, Plaintiffs and Class Members are people who had no formal association with Meta whatsoever, let alone one that would provide Meta with consent to take their confidential health information. That raises distinct factual and legal questions—about Plaintiffs' and Class Members' consent to interception, the magnitude of their harm, and Meta's use of the unlawfully obtained data—from those at issue in *In re Meta Pixel Healthcare Litigation*, Case No. 3:22-cv-03580-WHO ("*Healthcare*").

Given its unrelenting use of the Pixel to profit from mass surveillance, Meta cannot be surprised that it continues to face lawsuits addressing Pixel-driven privacy violations. As long as these fundamentally harmful and unlawful business practices persist, Plaintiffs and other consumers will continue to challenge them whenever and however they arise.

**Background**

Plaintiffs and the Class Members they seek to represent are individuals who do not have Facebook accounts, but nonetheless had their legally protected communications with health care Covered Entities illicitly intercepted by Meta via its Pixel technology. Compl. ¶¶ 14, 15.

The Pixel is an imperceptibly small snippet of code that, when placed on a website, transmits detailed information about consumers' web browsing activities to Meta. *Id*. ¶¶ 24, 28. The information that is transmitted includes not just detailed URLs but also the buttons consumers click and the

information they enter. *Id.* ¶¶ 29-33. Although the Pixel is invasive wherever it is used, its interceptions are particularly pernicious when deployed on the websites of Covered Entities—where it transmits to Meta information about specific diagnoses and treatment decisions. *Id.* ¶ 33. This highly sensitive and personal information is protected by federal and California statutes and common law. But the hidden nature of the Pixel means that transmissions to Meta occur without consumers' knowledge or legally required authorization. *Id.* ¶¶ 34, 48, 59.

Meta claims that it bars businesses using the Pixel from transmitting protected health information and actively filters this information out of its systems. That factual assertion is irrelevant and must be disregarded at this stage, given that the Complaint paints a starkly different picture. Plaintiffs allege that Meta actively courts business from Covered Entities, and allows them to use the Pixel, *even when* Meta actually knows the Pixel is intercepting protected health information. *Id.* ¶¶ 66, 67. Plaintiffs further allege that Meta's filtering system is underinclusive by design and does not reliably prevent the transmission of obviously protected health information, serving as a talking point, not a true compliance tool. *Id.* ¶¶ 64, 65.

In Plaintiffs' case, the Pixel intercepted their communications with Cerebral, a mental health telehealth provider. Compl. ¶¶ 36. It transmitted to Meta not only the fact that Plaintiffs were actively seeking mental health care (in and of itself protected, intimate information) but their specific symptoms. *Id.* ¶¶ 37-38. These interceptions violated bedrock public policies affirming the confidentiality of medical information and privacy in the provider-patient relationship. They caused Plaintiffs to spend more for Cerebral's services than they otherwise would have and diminished the value of the services provided. *Id.* ¶¶ 48, 189, 190.

While the Pixel is placed on third-party websites, it is Meta that designs the Pixel and determines the range of information it can intercept, *id.* ¶¶ 30, 141, 173; Meta that markets and disseminates the Pixel to other companies (including those it knows to be Covered Entities), *id.* ¶¶ 62, 66, 92; and Meta that directly profits from the data collected by the Pixel, *id.* ¶¶ 84, 85. Meta's revenues depend on its sales of targeted advertising, including advertising for Covered Entities. *Id.* ¶ 19. To make its ad offerings more targeted and therefore more valuable than ads offered by its competitors, Meta continually harvests the personal, detailed information of consumers. *Id.* ¶ 86. The

Pixel is key to fulfilling this business imperative. It gives Meta access to far more consumer data than it can gather through Facebook alone, including—crucially—the data of people *who do not even have Facebook accounts*.

Once Meta ingests Plaintiffs' and Class Members' protected health information, that information spreads throughout Meta's systems, serving a wide variety of business purposes. Most importantly for Meta, it provides valuable insights for the machine learning algorithms that underpin Meta's ad targeting system. Compl. ¶¶ 89-91. Meta also uses it to develop new products, carry out security measures, and produce analytics reports that incentivize companies to adopt the Pixel. *Id*. ¶¶ 92-93. Meta's unlawful interception of non-users' protected health information is thus far from incidental or peripheral. It is the beating heart of the business strategy of one of the world's largest companies.

**Legal Standard**

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When making this determination, courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the [plaintiff]." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008).

**Argument**

**I.    Invasion of Privacy**

Plaintiffs plausibly allege constitutional and tortious violations of their privacy, and Meta's argument to the contrary simply ignores key allegations in the complaint. MTD at 6-7. Plaintiffs allege that Meta intercepted "their full name, email address, phone number, and zip code; the fact that they had created an account [on a healthcare provider's website]; and health intake questionnaire answers." Compl. ¶ 15. Meta acknowledges that allegation, MTD at 7, but fails to acknowledge several others—that Plaintiffs' information was intercepted from Cerebral, an online mental health telehealth provider, Compl. ¶ 36; that the account creation data intercepted from Cerebral's website

3

"is in and of itself identifiable health information, as accounts were only created by people seeking treatment from Cerebral (rather than casually browsing its site)," *id*. ¶ 37; and that Meta intercepted Plaintiffs' answers to Cerebral's intake questionnaire, which revealed their answers to questions such as "how often in the previous two weeks they had felt 'down, depressed, or hopeless' as well as the fact that they "were actively using Cerebral's services" Compl. ¶ 38.

In *Healthcare*, Meta argued (as it does here) that the plaintiffs "fail[ed] to identify with specificity what, if any, private or particularly sensitive information about them Meta allegedly received." *Healthcare*, No. 22-cv-03580-WHO, 2023 WL 5837443, *11 (N.D. Cal. Sept. 7, 2023) The Court disagreed, finding only that Plaintiffs must make a "basic amendment" that "can be general enough to protect plaintiffs' specific privacy interests" and that need only "describe types or categories of sensitive health information that they provided through their devices to their healthcare providers." *Id.* at *8. Plaintiffs in this case amply have satisfied that requirement. As it has done before, the Court should reject Meta's argument that Plaintiffs should be forced to (once again) unwillingly share their specific diagnoses, symptoms, and treatment plans with Meta. *Id.*

## II.    UCL and CLRA

By unlawfully intercepting and using Plaintiffs' highly sensitive, highly protected health information Meta violated the Unfair Competition Law ("UCL") and the Consumers Legal Remedies Act ("CLRA"). Plaintiffs have suffered economic injuries sufficient to confer standing under both laws and have adequately alleged that Meta's conduct violated both laws.

### A.  Plaintiffs' economic injuries give them standing under the UCL and CLRA.

The statutory standing requirements of the UCL and CLRA are intertwined. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013) ("[A]ny plaintiff who has standing under the UCL's . . . 'lost money or property' requirement will, a fortiori, have suffered 'any damage' for purposes of establishing CLRA standing."). To meet them, plaintiffs must "establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*." *Kwikset Corp. v.*

*Super. Ct.*, 51 Cal.4th 310, 322 (Cal. 2011) (cleaned up) (emphasis in original).[1] Plaintiffs have done so, and Meta's argument to the contrary misapprehends the basis of their standing. MTD at 5.

Due to Meta's blatantly unlawful interception of their data, Plaintiffs both paid more for Cerebral's services than they were worth and did not receive the full value of the services they paid for. Compl. ¶¶ 13, 36, 48, 66, 163, 189, 190. These are well-established economic injuries sufficient to confer standing to assert UCL data breach and privacy violation claims. *See Kwikset*, 51 Cal.4th at 323 (plaintiffs suffer an economic injury if they "surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have" due to defendant's unfair conduct); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-CV-2284-H-KSC, 2020 WL 2214152, *9 (S.D. Cal. May 7, 2020) ("enough to establish standing for purposes of the UCL" where "Plaintiffs have all pled that 'they acquired less in their transactions with [medical supplier] than they would have if [supplier] had sufficiently protected their Personal Information.'"); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.* 440 F. Supp. 3d 447, 492 (D. Md. 2020) ("sufficient to establish standing for the UCL claim" where "Plaintiffs allege that 'had consumers known the truth about Defendants' data security practices—that they did not adequately protect and store their data— they would not have stayed at a Marriott Property, purchased products or services at a Marriott Property, and/or would have paid less'"). This type of benefit-of-the-bargain loss is "not contingent upon any subsequent misappropriation of appellants' PII," because the injury occurs at the time of the purchase. *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 528 (Cal. Ct. App. 2022). Cementing Plaintiffs' injury, Meta has never made Plaintiffs whole for their economic injuries, instead retaining all of its unfairly retained profits. Compl. ¶ 191.

---

[1] Defendant does not dispute that Plaintiffs' have adequately alleged this injury was caused by Defendants' violation of the UCL and has therefore waived the argument for the purposes of this motion. *See Autotel v. Nev. Bell Tel. Co*., 697 F.3d 846, 852 n.3 (9th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are waived.") (alteration in original); *Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006) (same); *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1090 (9th Cir. 2012) ("Unlike constitutional standing, which is jurisdictional, we presume that statutory standing may be waived.").

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – CASE NO. 3:23-CV-04784-WHO

Meta cites authorities that focus solely on the viability of standing under a lost value of PII theory.[2] But benefit-of-the-bargain injury is distinct from injury on the basis of lost value of personal information. Indeed, *Moore*, which is cited by Meta, makes this distinction explicit. The court in *Moore* held that the lost value of plaintiffs' personal information did not support UCL standing, but nonetheless found that the plaintiffs *had* standing under a benefit of the bargain theory. That's because "data security was sufficiently material to [plaintiffs] that had they known the truth of the matter, they would not have entered into contracts for medical services with Centrelake, or would not have accepted Centrelake's pricing terms." 83 Cal. App. 5th at 528-529.

That Plaintiffs paid Cerebral rather than Meta directly does not diminish their injuries. "A defendant can be liable for restitution under the UCL even if it is not the direct recipient of a plaintiff's misappropriated funds." *City and Cnty. Of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 695 (N.D. Cal. 2020). Here, Plaintiffs' payments were used by the Covered Entities to pay Meta for its advertising services, which Meta carried out using Plaintiffs' unlawfully obtained protected health information. Compl. ¶¶ 13, 163, 191. Meta "was not the direct recipient of the funds a plaintiff seeks to recover," *Ferrington v. McAfee, Inc.*, No. 10–CV–01455–LHK, 2010 WL 3910169, *8 (N.D. Cal. Oct. 5, 2010), but Plaintiffs nonetheless have standing under the UCL to seek "the return of money" that Meta "acquired through its unfair practices," *Shersher v. Super. Ct.*, 154 Cal. App. 4th 1491, 1498 (Cal. Ct. App. 2007).

Meta cites *Wesch v. Yodlee, Inc.*, No. 20-cv-05991-SK, 2021 WL 1399291 (N.D. Cal. Feb. 16, 2021), but that case is not to the contrary. Unlike here, the plaintiffs in that case did *not* allege that they had made any payments to an intermediary that in turn paid the defendant. *See id.* at *6 ("[B]ecause Plaintiffs have not paid Yodlee any money and have not alleged that they paid PayPal any money for use of its service; Plaintiffs have not alleged how they lost money or property in this

---

[2] *See Healthcare*, 2023 WL 5837443, at *15 (dismissing UCL claim where plaintiffs "injury is based on 'the loss of the inherent value of their personal data,'" and plaintiffs did not make benefit of the bargain allegations); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) (same); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (same); *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021) (same); *Katz-Lacabe v. Oracle Am., Inc.*, No. 22-cv-04792-RS, 2023 WL 2838118, *8 (N.D. Cal. Apr. 6, 2023) (same).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – CASE NO. 3:23-CV-04784-WHO

manner."). This is case is substantially closer to *In re Anthem, Inc. Data Breach Litigation*, No. 15-MD-02617-LHK, 2016 WL 3029783, *32 (N.D. Cal. May 27, 2016). There, plaintiffs had standing under the UCL where they made Payments to a Covered Entity "which were in turn used [by the recipient] to pay for services by Defendants." *Id.* "As part of these services, Defendants were, at minimum, required to comply with certain privacy laws, which Defendants allegedly did not do." *Id.* As a result, the plaintiffs "established economic injury." *Id.*[3]

**B. Plaintiffs' UCL fraud allegations and CLRA allegation comply with Rule 9(b).**

Plaintiffs' allegations in support of the unlawful and unfair prong of their UCL claim do not sound in fraud. Thus, they do not have to meet the heightened pleading requirements of Rule 9(b). Meta's argument to the contrary fundamentally misunderstands the application of Rule 9(b) to Plaintiffs' UCL claims.

The UCL has three prongs: it prohibits conduct that is unlawful, unfair, or fraudulent. Cal. Bus. & Prof. Code § 17200. Fraud is only an inherent element of the "fraudulent" prong.[4] *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367-68 (Cal. Ct. App. 2010) (explaining that claims brought under other prongs of the UCL may but do not necessarily also involve fraud). Accordingly, "a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003).

Here, Plaintiffs' allegations relate to Meta's unauthorized receipt and use of Plaintiffs' private health care information, which would be unlawful and unfair *even if* Meta had been fully transparent about its conduct. Compl. ¶¶ 182, 187. For instance, in *In re Zoom Video Communications Inc. Privacy Litigation*, 525 F. Supp. 3d 1017 (N.D. Cal. 2021), the court agreed that Rule 9(b) applied

---

[3] As discussed *infra* pages 12-14, the CLRA also does not require that plaintiffs have made payments directly to defendants.

[4] Fraud is also not an inherent element of a CLRA claim, but Plaintiffs acknowledge that all allegations in their CLRA claim involve fraudulent conduct. *See* Compl. ¶ 197.

7

only to plaintiffs' allegations under the fraudulent prong of the UCL and should not be applied to the unlawful and unfair prongs of the UCL claim. *Id.* at 1045. Likewise, in *Anthem,* the court applied the Rule 9(b) standard only to plaintiffs' claims under the fraudulent prong of the UCL, not to their allegations that the defendant unlawfully violated a host of state and federal privacy protections (including HIPAA, ECPA, and CIPA). 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016); *see also Gardner v. Health Net, Inc.*, No. CV 10-2140 PA (CWx), 2010 WL 11597979, *11 (C.D. Cal. Aug. 12, 2010) (separately addressing plaintiffs' allegations under the unlawful prong and fraudulent prong, and imposing a reliance requirement only on the latter); *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d, 434, 457-64 (N.D. Cal. 2018) (applying Rule 9(b) to plaintiffs' allegations under the fraudulent prong but not their allegations under the unlawful or unfair prongs).

To be clear, Plaintiffs *do* raise certain allegations that sound in fraud—specifically, that Meta fraudulently omitted information about its collection of non-users' protected healthcare information. Compl. ¶¶ 183-186. But these allegations (raised under the fraudulent prong of the UCL and the CLRA) comply with Rule 9(b). Importantly, "claims based on an omission can succeed without the same level of specificity required by a normal fraud claim. This is because a plaintiff alleging an omission-based fraud will not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim. Because the plaintiffs are alleging a failure to act instead of an affirmative act, the Plaintiffs cannot point out the specific moment when the Defendant failed to act." *Macdonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (cleaned up). In short, omission-based fraud claims may satisfy Rule 9(b) through more generalized allegations about the "who what when where, and how" of the alleged misconduct. *Id.*

Meta largely fails to appreciate the different applicability of Rule 9(b) to omission- vs. representation-based fraud claims. Indeed, it relies on *Haskins v. Symantec Corp.* and *Perkins v. LinkedIn Corp.*, cases that dealt with fraudulent *representations*, not omissions. *See Haskins*, 654 F. App'x 338, 339 (9th Cir. 2016); *Perkins*, 53 F. Supp. 3d 1190, 1200–01 (N.D. Cal. 2014). And while *Zoom* referred to alleged "misrepresentations or omissions," the court's description makes clear that only misrepresentations were at issue in the complaint. 525 F. Supp. 3d at 1046 (noting that, while the complaint "identif[ies] the statements on Zoom's website and privacy policy that are reasonably

likely to mislead," "Plaintiffs fail to allege when and where they saw all (or even some) of the many misrepresentations alleged."). To the limited extent Meta deals with omission cases at all, it relies solely on cases alleging omissions from specified documents.[5] Courts have repeatedly held that fact pattern is not analogous to more generalized fraudulent omission allegations like those at issue here. *See Macdonald*, 37 F. Supp. 3d at 1096 (differentiating between the facts of the instant fraudulent omission allegation, where a more relaxed Rule 9(b) analysis was appropriate, and a case concerning "an alleged omission within a particular advertisement"); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 877 (N.D. Cal. 2018) (same); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1113 (N.D. Cal. 2015) (same).

Meta insists that the determinative inquiry is whether Plaintiffs have ever "read Meta's policies" or saw and relied on any one specific statement by Meta. MTD at 4. Meta is wrong. "What matters in an omission case . . . is whether the plaintiff had an opportunity to receive and therefore rely on the omitted information, not whether they actually received some other, irrelevant information. Although the actual receipt of some information from a defendant might tend to demonstrate that the plaintiff had an opportunity to receive additional information, it is not necessarily the only way to establish such an opportunity." *Sloan*, 287 F. Supp. 3d at 876; *see also Mirkin v. Wasserman*, 5 Cal.4th 1082, 1094 (Cal. 1993) (to prove reliance, "[o]ne need only prove that, had the omitted information been disclosed one would have been aware of it and behaved differently").

Plaintiffs are non-users of Facebook. There is no reason they would have looked at Meta's policies. There is no reason they ever *should* have looked at Meta's policies. And that is precisely the issue: If Meta wants to intercept protected health care data from non-users *with whom it has no privity of contract*, then at a bare minimum it needs to provide ample notice to such non-users—meaning it has to inform the public at large. Meta did not do so, and that is unlawful. Compl. ¶¶ 183, 184, 198, 199. Plaintiffs allege that, had Meta publicly revealed its collection and use of non-users' protected health care information, they would have been aware of the same due to extensive media coverage

---

[5] *E.g. Yahoo! Inc. Customer Data Sec. Breach Litig.*, Case No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017); *In re Facebook PPC Advertising Litig*, Nos. 5:09–cv–03043–JF, 5:09–cv–03519–JF, 5:09–cv–03430–JF, 2010 WL 3341062 (N.D. Cal. Aug. 25, 2010).

9

and public interest; that Meta's omissions were highly material; and that had Plaintiffs known what Meta concealed they would have behaved differently. *Id*. ¶¶ 185, 186, 200, 201.

Numerous cases make clear these allegations are sufficient to fulfill the requirements of Rule 9(b). *See Carrier*, 78 F. Supp. 3d at 1113-14 (finding that plaintiffs complied with Rule 9(b) and UCL pleading requirements because they alleged what information was omitted, that the omitted information was exclusively known by defendants, that they would have acted differently had they known the omitted information, and that the omitted information was the subject of intense public outcry); *MacDonald*, 37 F. Supp. 3d at 1096 ("Plaintiffs adequately allege the "who what when and how," given the inherent limitations of an omission claim. In short, the "who" is Ford, the "what" is its knowledge of a defect, the "when" is prior to the sale of Class Vehicles, and the "where" is the various channels of information through which Ford sold Class Vehicles."); *Sloan*, 287 F. Supp. 3d at 874 ("Plaintiffs would likely meet their burden under Rule 9(b) even without specifically identifying a particular advertisement in which the omitted information should have been included, so long as they provide plausible allegations . . . that they would have received the information in some way had Defendant exercised reasonable care.").

### C.  Meta's conduct was unfair.

The only prong of Plaintiffs' UCL claim that Meta substantively opposes is the unfair prong.[6]

California courts have used several tests to assess claims under the unfair prong, including the "balancing" and the "tethering" tests. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023). Successfully meeting either test is sufficient for a claim to move forward. *See Anthem*, 162 F. Supp. 3d at 990 (sustaining plaintiffs' unfairness claim on the basis of the balancing test alone).

Under the balancing test, "'an unfair business practice occurs when it offends an established public policy *or* when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Anthem*, 162 F. Supp. 3d at 990 (emphasis original) (quoting *Bardin v. Daimlerchrysler Corp*., 136 Cal. App. 4th 1255 (Cal. Ct. App. 2006)); *Kellman v. Spokeo, Inc*., 599 F. Supp. 3d 877, 896 (N.D. Cal. 2022) (same). To fulfill this test, a plaintiff needs only show the

---

[6] Meta has therefore waived any disputes regarding the merits of Plaintiffs' claims under the unlawful and fraudulent prongs of the UCL; *see supra* n.1.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – CASE NO. 3:23-CV-04784-WHO

existence of a single element. *See Anthem*, 162 F. Supp. 3d at 990 (sustaining plaintiffs' unfairness claim on the basis of the public policy element of the balancing test). Additionally, because the weighing of any benefits to a defendant against the harms caused to the plaintiffs cannot be resolved on a motion to dismiss, at this stage, plaintiffs need only "adequately allege[] conduct (interception and transmission of private and confidential communications and data) that plausibly could outweigh the utility of such conduct to Defendants." *Carrier*, 78 F. Supp. 3d at 1117.

When courts have applied the tethering test to consumer claims, they applied a more expansive version than the one quoted by Meta, which is reserved for competitor claims. MTD at 6. This modified version asks "whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law." *Doe v. CVS Pharmacy, Inc*., 982 F.3d 1204, 1214 (9th Cir. 2020) (cleaned up). The Ninth Circuit also recently clarified in *Epic* that the tethering test is only appropriate for UCL claims by businesses against their competitors, while the balancing test applies to consumer claims like Plaintiffs'. *Epic¸* 67 F.4th 946 at 1000; *see also In re Intel Corp. CPU Mktg., Sales Practices and Prods. Liab. Litig.*, No. 22-35652, 2023 WL 7211394, *2 (9th Cir. Nov. 2, 2023) (applying the balancing test to consumer unfairness claims, citing *Epic*).

Plaintiffs' allegations satisfy both tests. Turning first to the balancing test, Meta's interception of identifiable health information shared with a Covered Entity not only violates state and federal law, it offends the underlying public policies those laws promote. "By enacting criminal and civil statutes forbidding the disclosure of protected health information without proper authorization, Congress has made policy decisions regarding the importance of safekeeping this information." *Healthcare*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022); *see* Compl. ¶ 187. And, as courts have recognized in other cases dealing with the interception of personal information, California has a public policy of "ensuring that private communications or data are not intercepted." *Carrier*, 78 F. Supp. 3d at 1117.

Additionally, Plaintiffs have suffered serious injuries from Meta's use of the Pixel. As discussed above, Meta's actions have caused Plaintiffs to spend more and receive less than they otherwise would have when paying for Covered Entities' services. *See In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014) (finding that an economic injury sufficient for

UCL standing was also sufficient to meet the balancing test). But the most severe injury caused by Meta was to Plaintiffs' privacy. "Like a bug hidden in the ceiling of a therapist's office, Meta used the Pixel to intercept and eavesdrop on Plaintiffs' highly sensitive and identifiable health disclosures." Compl. ¶ 36. Rather than effectively act to prevent these harms, Meta has created a filtering system that "in practice, . . . often does not work at all" and is "underinclusive by design," blatantly disregarding "the obviously highly sensitive nature of the information transmitted to Meta." Compl. ¶¶ 64, 65, 67. Given the magnitude of Meta's harm to public policy, black letter law, and individual consumers, it is at a minimum plausible that the harms caused by Meta's conduct outweigh any benefits. *See Carrier*, 78 F. Supp. 3d at 1117.

Plaintiffs' allegations also satisfy the tethering test (assuming that test is even applicable to consumer claims). Plaintiffs allege that Meta's conduct violated several state and federal privacy laws, sufficiently tethering their allegations of unfairness to specific public policies. Compl. ¶¶ 182, 187; *see Zoom*, 525 F. Supp. 3d at 1047-48 (allegations that defendant violated HIPAA and other privacy and consumer protection statutes fulfilled the tethering test). By contrast, plaintiffs that flunk the tethering test do so where they fail to "reference any established public policy that [the defendant's] actions have violated or claim that the conduct is immoral, unethical, oppressive, or unscrupulous." *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012).

### D.  Plaintiffs are "consumers" as defined by the CLRA.

The CLRA governs the actions of "any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer". Cal. Civ. Code § 1770(a). Meta only disputes the sufficiency of Plaintiffs' allegations regarding one of these substantive elements.[7] Meta argues Plaintiffs are not "consumers" under the CLRA because while they "purchase[] or lease[] goods or services," they have not done so "*from the defendant*." MTD at 6 (emphasis in original).

This argument is unsupported by the text of the CLRA, which must be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices." Cal. Civ. Code § 1760. The CLRA defines "consumer" only as "an

---

[7] As such, Meta has waived any arguments related to those other issues. *See supra* n.1.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – CASE NO. 3:23-CV-04784-WHO

individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). "Nothing in the language of the CLRA states that only a defendant who *directly* engaged in a completed transaction with a plaintiff may be liable to that plaintiff." *Chamberlan v. Ford Motor Co.*, No. C 03–2628 CW, 2003 WL 25751413, *6 (N.D. Cal. Aug. 6, 2003) (emphasis added). The weight of authority in the Ninth Circuit supports that point, permitting CLRA claims against defendants from whom plaintiffs did not directly purchase goods and services. [8] *See, e.g.*, *Philips v. Ford Motor Co.*, No. 14–CV–02989–LHK, 2015 WL 4111448, *14-15 (N.D. Cal. Jul. 7 2015) ("[T]he vast majority of courts to address the issue have rejected Ford's argument, holding instead that a plaintiff need not allege a direct transaction with the manufacturer."); *Makaeff v. Trump Univ., LLC*, 145 F. Supp. 3d 962, 979-80 (S.D. Cal. 2015) (finding that plaintiffs and defendant entered into a transaction despite the fact that plaintiff did not purchase any services directly from defendant); *Rossi v. Whirlpool Corp.*, No. 2:12–cv–00125, 2013 WL 5781673, *10 (N.D. Cal. Oct. 25, 2013) (affirming CLRA liability of manufacturers who had no direct relationship with plaintiffs and collecting cases).

*Meta* instead rests its argument on cases where the plaintiffs failed to allege they paid money for *any* goods or services, whether from the Meta or other parties. In *In re Facebook Privacy Litigation*, for example, plaintiffs argued that they qualified as consumers because they had "paid" for the defendants' services with their personal data. 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014). The court found that was insufficient because loss of personal data is not an economic injury for purposes of the statute. *Id.*[9] Here, Plaintiffs' argument rests not on the

---

[8] The minority of courts that have held that a direct sale between plaintiffs and defendants is required for a CLRA claim have done so under the "transaction" requirement of the CLRA. *See, e.g.*, *Green v. Canidae Corp.*, No. CV 09–0486 GAF (PLAx), 2009 WL 9421226, *4 (C.D. Cal. June 9, 2009), (finding that because there was no direct sale a defendant manufacturer "never transacted business or intended to transact business with the consumer"). But Meta does not cite *Green* or any similar cases because it does not dispute the separate and distinct "transaction" element of Plaintiffs' CLRA claim. MTD at 6; Cal. Civ. Code § 1761(e)-(d) (separately defining consumer and transaction). Meta has thus waived any arguments to the contrary. *See supra* n.1.

[9] *See also Song Fi, Inc. v. Google, Inc.*, 2016 WL 1298999, at *12 (N.D. Cal. Apr. 4, 2016) (same, with regard to browsing traffic); *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 864 (N.D. Cal. 2011) (same); *In re Yahoo!*, 2017 WL 3727318, at *32–33 (same with regard to plaintiffs' use of free email services).

value of their personal information, but on the fact that they paid Cerebral for health care services. Compl. ¶¶ 113, 37, 200. As such, they are "consumers" under the CLRA.

### III.    Conversion

Meta took and used Plaintiffs' and Class Members' protected health care information—their property—without their permission. "This undoubtedly constitutes a wrongful act," *DirecTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189–90 (E.D. Cal. 2005), and is the basis of Plaintiffs' conversion claim.

"The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (Cal. Ct. App. 1998). The first element is undisputed.[10] While Meta contends that Plaintiffs have not adequately pled it converted their property or that Plaintiffs suffered damages, those arguments are at odds with both California law and the allegations.

### A.  Meta converted Plaintiffs' property.

In attempting to wave away responsibility for its conversion of Plaintiffs' health care information, Meta improperly argues against Plaintiffs' allegations and misconstrues governing law in California and the Ninth Circuit.

As an initial matter, Meta makes improper factual assertions that its filtering system effectively keeps protected health information out of its systems. MTD at 15. It is axiomatic that Plaintiffs' complaint must be accepted as true at this stage. *Manzarek*, 519 F.3d at 1031. The complaint alleges not only that Meta's filtering system is extremely ineffective and underinclusive, but that, even when protected health information is flagged, Meta does not cut off third parties' access to the Pixel.[11] *Supra* page 2.

---

[10] Meta does not dispute that Plaintiffs' identifiable health care information is capable of exclusive control, i.e. that it is property. MTD 8-9. Meta has waived any arguments to the contrary. *Supra* n.1.

[11] To the extent that Meta argues their filtering system demonstrates a lack of wrongful intent, "[c]onversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant." *Burlesci*, 68 Cal. App. 4th at 1066.

Meta's legal arguments are similarly flawed. California courts have adopted a broad understanding of the tort of conversion. To satisfy the second element of a conversion claim, "[i]t is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." *Hartford Fin. Corp. v. Burns*, 96 Cal. App. 3d 591, 598 (Cal. Ct. App. 1979).[12] Meta did both.

First, Meta assumed control over Plaintiffs' protected health care information, by depriving Plaintiffs of the ability to control its dissemination. Compl. ¶ 176. Meta argues this is not the case because it did not retain "exclusive use" of the data, MTD at 8, but that simply is not the right test— as Meta's lead case shows. *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) concerned a domain name that redirected those who entered it into a browser. *Id.* at 1030. As the court explicitly acknowledged, that domain name could be *used* by multiple people. But only its *owner* could decide where it would redirect and otherwise determine the terms of its use. By reassigning the plaintiff's domain name, the defendant in *Kremen* converted his property. *Id.* at 1035-36.

The same is true of Plaintiffs' health care information. It, too, can be used by multiple parties (including Plaintiffs and their physicians). But—per state and federal law—only Plaintiffs are authorized to freely disseminate it. Just as in *Kremen*, Meta's unilateral decision to wrest from Plaintiffs the right to control access to and use of their information constitutes conversion. *See also eBay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058, 1066-67 (N.D. Cal. 2000) ("[F]undamental to the concept of ownership of personal property is the right to exclude others.").

Second, Meta has applied Plaintiffs' health care information for its own use. Indeed, the complaint alleges that Meta put Plaintiffs' protected health information to extensive use in its own operations and for its own benefit. Compl. ¶¶ 83-93, 176. That brings this case in line with *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896 (9th Cir. 1992), which also dealt with the conversion of intangible property that did not preclude its rightful owner from use. There,

---

[12] Tellingly, Meta truncates this quotation in its briefing, obscuring its true meaning. *See* MTD at 8.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – CASE NO. 3:23-CV-04784-WHO

the Ninth Circuit made clear that conversion occurs when a defendant "obtained a valuable benefit as a consequence of using [plaintiffs' property] without authorization or permission." *Id.* at 906.

Meta cites dicta from the Seventh Circuit to suggest that because its use of information occurred through the wrongfully copying of data, it cannot be held liable for conversion. MTD at 8-9 (citing *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300 (7th Cir. 1990)).[13] That is incorrect. Subsequent California court decisions (all ignored by Meta) have rejected *FMC*'s attempt to create a blanket prohibition on conversion claims involving copied information. *Planned Parenthood Los Angeles v. Gonzalez* put the matter plainly: "California courts have recognized conversion claims based on the taking of copies of intangible personal property even when the owner retains an original or copy." No. B190490, 2007 WL 1087292, *11 (Cal. Ct. App. Apr. 12, 2007). In that case, the court explicitly declined to apply *FMC* and held that Planned Parenthood could succeed in a conversion claim against a former employee, who had taken and released copies of confidential writings, "despite the fact that many of the writings were merely copies." 2007 WL 1087292, *11.[14] *FMC* was also inconsistent with an earlier ruling from the California Court of Appeal, *A&M Records, Inc. v. Heilman*, in which the court held that defendant converted plaintiffs' intangible property by selling illegal copies of their recordings. 75 Cal. App. 3d 554, 570 (Cal. Ct. App. 1977).

---

[13] Meta's other authority for this argument, *Hernandez v. Path, Inc.*, No. 12–CV–01515 YGR, 2012 WL 5194120, *7 (N.D. Cal. Oct. 19, 2012), reached its holding that copied information could not form the basis of a conversion claim because Plaintiffs conceded the issue, not on the merits.

[14] *See also Pillsbury, Madison & Sutro v. Schectman*, 55 Cal. App. 4th 1279, 1286 (Cal. Ct. App. 1997) (categorizing the holding of *FMC* as "a public policy exception to the general rules protecting property interest" rather than a general statement of the law of conversion in California); *Leflore v. Los Angeles County Metropolitan Transportation Agency*, No. B18465, 2006 WL 2677862, *10 ( Cal Ct. App. Sept. 9, 2006) (same); *Thrifty–Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1565 (Cal. Ct. App. 1996) (recognizing in dicta that taking a copy of a disk containing proprietary information can constitute conversion of the information). The decision in *VSS Emultech v. Crenshaw*, No. C049676, 2006 WL 2411454, *8-9 (Cal. Ct. App. Aug. 22, 2006), mentioned but did not resolve the question of *FMC*'s relevance to California law, instead reaching its decision on the issue of whether an adequate offer of proof had been made, The one California case that has substantively applied *FMC*, *Phillips v. Davis*, No. B215288, 2010 WL 3128362, *6 (Cal. Ct. App. Aug. 10, 2010), did so without any analysis, and the issue does not appear to have been briefed by the parties in the case. *See* Respondent-Defendant's Brief, *Phillips v. Davis*, 2010 WL 1422945 (Mar. 12, 2010) (not discussing the issue of conversion) (Appellant-Plaintiff's brief is not available online).

16
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – CASE NO. 3:23-CV-04784-WHO

*FMC* is equally out of step with Ninth Circuit precedent. *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718 (9th Cir. 1984), which heavily cited *A&M Records*, held that the defendant engaged in conversion under California law when it distributed unlicensed copies of radio broadcasts. *Id.* at 726. Similarly, *Rasmussen* found that the defendant's unauthorized use of the plaintiff's FTC airworthiness certificate could form the basis of a California law conversion claim, even though plaintiff remained free to use the certificate. 958 F.2d at 906-07; *see also Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 9 F.4th 1167, 1176 (9th Cir. 2021) ("[W]hen a defendant's reproduction of the content violates recognized property rights, such as first publication or reproduction, . . . courts recognize a misappropriation or conversion."). Plaintiffs have therefore adequately alleged that Meta's appropriation and use of their protected health information was a conversion.

Meta's remaining citations accomplish little. *Sydney Ji v. Naver Corp.*, No. 21-cv-05143-HS, 2023 WL 6466211 (N.D. Cal. Oct. 3, 2023) simply states without additional reasoning that the plaintiffs did not adequately allege conversion by the defendant. *Id.* at *14. That is not the case here, Plaintiffs have amply alleged this element of their conversion claim. *Healthcare* is inapposite because it did not concern conversion at all but trespass to chattels. 2023 WL 5837443, at *21. Unlike conversion, trespass to chattels only allows for recovery of "the actual damages suffered by reason of the impairment of the property or the loss of its use." *Intel Corporation v. Hamidi*, 30 Cal.4th 1342, 1351 (Cal. 2003) (emphasis omitted).

### B. Meta's conversion injured Plaintiffs, entitling them to statutory damages.

Plaintiffs have adequately pled damages from Meta's conversion of their health care data. Meta's conversion of that property seriously injured Plaintiffs' privacy. The Court has already established that Meta's interception of private, identifiable health information is "a weighty injury." *Healthcare*, 647 F. Supp. 3d at 804 (quotation marks and brackets omitted). But Plaintiffs and Class Members' injury is made even weightier by the fact that not only did they not give Facebook permission to intercept their health care information, they did not have Facebook accounts—making Facebook a true stranger lurking in the corner of their digital doctors' offices. Compl. ¶¶ 36, 102. The laws that strictly limit the receipt, sharing, and use of identifiable health information, *id*. ¶¶ 48-59; the repeated public outcries over Meta's use of non-user data in its operations, *id*. ¶¶ 70-77; and the

common-sense observation that "[f]ew prospective patients would entrust such information . . . to a medical provider known to be careless with it," *Moore*, 83 Cal. App. 5th at 529, all made it reasonably foreseeable that Meta's actions would lead to such an injury. Plaintiffs and Class Members are accordingly entitled to the value of the property that Meta converted. *See Lueter v. State.*, 94 Cal. App. 4th 1285, 1302 (Cal. Ct. App. 2002) (explaining that once injury is shown, "[a]s a general rule, the value of the converted property is the appropriate measure of damages"); Cal. Civ. Code § 3363 ("The detriment caused by the wrongful conversion of personal property is presumed to be: First— The value of the property at the time of the conversion, with the interest from that time. . . .").

Meta contends that Plaintiffs must demonstrate they were "foreclosed from capitalizing on the value of [their] personal data or how [they were] deprived of the economic value of [their] personal information" to sustain a claim for conversion of personal data. MTD at 9 (quoting *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030-1031 (N.D. Cal. 2012)). This argument does not reflect California law. California courts have made clear that the injury caused by a defendant's conversion does not have to be economic, because the act of conversion will necessarily "provide the converter with very direct knowledge of the likely consequences of such interference," lessening causal concerns about non-economic damages. *Gonzales v. Personal Storage, Inc.*, 56 Cal. App. 4th 464, 476-77 (Cal. Ct. App. 1997); *White v. Molfetta*, 64 Cal. App. 5th 628, 639 (Cal. Ct. App. 2021) (acknowledging that emotional distress damages can be recovered through a conversion claim).

The cases relied on by Meta expressly or by reference concern the standard for establishing an economic injury in fact for the purposes of Article III standing. *See LaCourt v. Specific Media, Inc.*, No. SACV 10–1256–GW(JCGx), 2011 WL 1661532, *5 (C.D. Cal. Apr. 28, 2011) (discussing economic injury for the purposes of Article III); *Opperman v. Path*, Inc., 84 F. Supp. 3d 962, 990 (N.D. Cal. 2015) (finding that plaintiffs do not have standing under Article III because they have not alleged that the value of their data was diminished by defendant's conversion).[15] Because conversion

[15] That is equally true of *Low*, which cited to an earlier decision in the same case analyzing whether the plaintiffs had suffered an economic injury for the purposes of Article III standing. *Low* relied on that inapposite analysis in explaining why "Plaintiffs have failed to establish the requisite claim for damages necessary to establish a claim for conversion." 900 F. Supp. 2d at 1030-1031 (citing *Low v. LinkedIn Corp.*, No. 11–CV–01468–LH, 2011 WL 5509848, *5 (N.D. Cal. Nov. 11, 2011)).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – CASE NO. 3:23-CV-04784-WHO

damages can be non-economic, these cases are inapposite. Moreover, when California law borrows from Article III jurisprudence, it does so explicitly. *See Kwikset*, 51 Cal.4th at 322 (applying the federal concept of Article III "injury in fact" to the UCL's standing analysis because the relevant statute and the ballot measure both used the specific term).

Finally, even if the cases cited by Meta were applicable to conversion claim damages (which they are not), they do not reflect subsequent Ninth Circuit precedent. *In re Facebook Inc. Internet Tracking Litigation*, 956 F.3d 589, 601 (9th Cir. 2020) held that plaintiffs alleging Facebook unjustly profited from their data have Article III standing to bring an array of California property tort claims against Facebook. That was so regardless of whether the value of plaintiffs' data had been reduced and regardless of whether they had been unable to sell it.

**Conclusion**

For the foregoing reasons, the Court should deny Meta's motion to dismiss.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – CASE NO. 3:23-CV-04784-WHO

DATED: December 19, 2023

**MOTLEY RICE LLC**

*s/ Previn Warren*
Previn Warren[*]
Abigail Burman[*†]
401 9th Street NW Suite 630
Washington DC 20004
Tel: 202-386-9610
pwarren@motleyrice.com
aburman@motleyrice.com

Mathew Jasinski[*]
One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
mjasinski@motleyrice.com

[*]*APPEARANCE PRO HAC VICE*

[†]*Admitted only in Maryland, not admitted in the District of Columbia. Practicing under the supervision of the membership of Motley Rice, LLC.*

**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK LLP**

James M. Wagstaffe (95535)
Frank Busch (258288)
100 Pine Street, Suite 2250
San Francisco, CA 94111
Tel: 415-357-8900
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – CASE NO. 3:23-CV-04784-WHO