**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:   (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:   (415) 393-8200
Facsimile:    (415) 393-8306

*Attorneys for Defendant Meta Platforms, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| E.H. and C.S., *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:23-cv-04784-WHO<br><br>**META PLATFORMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR COMPLAINT**<br><br>Action Filed: September 18, 2023<br>Date: April 2, 2025<br>Time: 10:00 a.m.<br>Honorable William H. Orrick |

**INTRODUCTION**

Plaintiffs' motion to amend their complaint is an attempt to get a second bite at the apple in seeking unbounded and unjustified discovery that Judge DeMarchi already denied. The complaint in this case alleges that one healthcare provider—Cerebral—used the Meta Pixel to send plaintiffs' protected health information to Meta. This Court's order denying Meta's motion to dismiss was likewise tethered to plaintiffs' specific allegations about Cerebral and how Cerebral used the Meta Pixel. In discovery, however, plaintiffs demanded that Meta produce documents about "its interactions with *all* 'Covered Entities' under HIPAA and CMIA." Dkt. 85 at 1. Judge DeMarchi rebuffed that demand: she denied plaintiffs' motion to compel, noting that "plaintiffs' specific allegations of misconduct are limited to users['] interactions with Cerebral" and that "there are no allegations specific to . . . any of the unidentified hospitals asserting that those entities' deployment of the pixel resulted in the improper or unconsented-to transmission of personal health information to Meta." Dkt. 93 at 2.

In response, plaintiffs have moved to amend their complaint. But the proposed amended complaint does nothing to address the factual gaps Judge DeMarchi identified or to justify freewheeling discovery into other entities that plaintiffs do not allege injured them. Instead, plaintiffs have made minor cosmetic changes asserting that the scope of their putative class encompasses all HIPAA- and CMIA-covered entities, and appending a list of roughly 70 entities that plaintiffs say used the Meta Pixel. But the proposed amended complaint alleges *no additional facts* suggesting that any plaintiffs were patients of any of those entities or that any of those entities used the Pixel improperly to send protected health information to Meta. This is an exercise in futility: plaintiffs cannot simply assert a broader class, demand discovery without alleging facts to justify it, and assert claims based on a list of new entities without any factual allegations that they used those entities' websites or that those entities misused Meta's Pixel. Plaintiffs are thus left exactly where they were when Judge DeMarchi denied their motion to compel—with a complaint that alleges certain facts about Cerebral, but that contains no "allegations specific to" the host of other entities plaintiffs say are at issue. Dkt. 93 at 2. Because plaintiffs' proposed amended complaint is futile, and because allowing amendment would prejudice Meta and waste judicial resources by forcing the parties to relitigate discovery issues already resolved, the Court should deny leave to amend.

# BACKGROUND

**A.     Plaintiffs' Complaint Alleges Cerebral Sent Their Health Information To Meta.**

This action was filed on September 18, 2023.  Dkt. 1 ("Compl.").  In the complaint, two plaintiffs—E.H. and C.S.—allege that their healthcare provider, Cerebral, used the Meta Pixel to send their health data to Meta.  *See id.* ¶¶ 35–38.  Plaintiffs do not allege that they used any other healthcare provider, and the complaint only mentions one other healthcare provider (Monument) by name.  *See id.* ¶¶ 40, 67.

On November 14, 2023, Meta moved to dismiss plaintiffs' claims for invasion of privacy, violation of California's Unfair Competition Law ("UCL"), and violation of California's Consumers Legal Remedies Act ("CLRA").  Dkt. 34.  This Court's order denying Meta's motion to dismiss was based on allegations specific to Cerebral.  For example, this Court allowed plaintiffs' privacy claims to proceed because "Cerebral is not simply a healthcare provider," but "a mental health services provider." *E.H. v. Meta Platforms, Inc.*, 2024 WL 557728, at *2 (N.D. Cal. Feb. 12, 2024).  The Court noted that plaintiffs had "identified the specific types of information" they provided to Cerebral, and that while "some of [that information] would ordinarily not be protected, [it] plausibly becomes sensitive or private considering that plaintiffs were seeking mental health services." *Id.* at *3; *see also id.* at *2 (concluding plaintiffs adequately alleged that "they provided specific categories of information to Cerebral, a mental telehealth provider," including "responses to questions regarding their mental health in the past few weeks"); *id.* at *3 & n.4 (noting absence of "caselaw regarding disclosure of personally identifying information from individuals seeking mental health services" and that "[t]he nature of the invasion of privacy alleged here is markedly different").  The Court also allowed plaintiffs' UCL and CLRA claims to proceed "based on their payments to Cerebral and Cerebral paying Meta for its services."  *Id.* at *5 (emphasis omitted).

**B.     Judge DeMarchi Denied Plaintiffs' Motion To Compel Discovery Pertaining To All HIPAA- and CMIA-Covered Entities.**

After withstanding a motion to dismiss based on Cerebral-specific allegations, plaintiffs demanded that Meta produce discovery not only about Cerebral, but also about Meta's "interactions with *all* 'Covered Entities' under HIPAA and CMIA."  Dkt. 85 at 1.  Meta argued that this demand was

disproportionate to the needs of the case and not supported by the allegations in the complaint, which alleged only that *Cerebral* used the Meta Pixel to send plaintiffs' health information to Meta. *See id.* at 1, 4–6. Plaintiffs asked Judge DeMarchi to issue "an order compelling Meta to respond to discovery about its interactions with HIPAA and CMIA-covered entities." *Id.* at 4.

Judge DeMarchi rejected plaintiffs' request in a December 2024 order. Dkt. 93. In it, she "agree[d] with Meta that plaintiffs' specific allegations of misconduct are limited to users['] interactions with Cerebral." *Id.* at 2. She explained that there "are no allegations specific to Monument or to any of the unidentified hospitals asserting that those entities' deployment of the pixel resulted in the improper or unconsented-to transmission of personal health information to Meta." *Id.* Accordingly, Judge DeMarchi concluded that "plaintiffs may not obtain discovery from Meta about *all* entities covered by HIPAA and/or CMIA that use the Meta pixel, as such discovery is not reasonably directed to matters relevant to a claim or defense and is not proportional to the needs of the case." *Id.* She also encouraged the parties to "confer regarding an expeditious means of addressing discrepancies between what the complaint alleges and what plaintiffs believe their claims to be." *Id.* at 3 n.1.

### C. Plaintiffs' Proposed Amended Complaint Does Not Add Factual Allegations About Other Providers.

On January 27, 2025, plaintiffs moved for leave to amend their complaint. Dkt. 96. The proposed amended complaint defines "covered entities" to "encompass[] all HIPAA and/or CMIA covered entities," and defines the putative class to include non-Facebook users for whom certain information was sent by a "Covered Entity." Dkt. 96-1 ¶ 11 & n.2; *see also id.* ¶ 104 & n.8. The proposed amended complaint also appends a list of approximately 70 entities that plaintiffs say are at issue. *See id.* App. A. Plaintiffs provide the URLs and Pixel IDs for those entities, *see id.*, but they do not otherwise make any factual allegations about where or how the Pixel was configured on those entities' websites, nor do they allege that they used any of these entities' websites.

## ARGUMENT

Courts in the Ninth Circuit consider five factors "to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th

Cir. 2004). The Court should deny plaintiffs' motion for two reasons: futility and prejudice. *First*, the proposed amendment is futile—which "alone can justify the denial of a motion to amend." *Id.* (quotation marks omitted). The cosmetic changes in plaintiffs' proposed amended complaint do not fix the underlying problem Judge DeMarchi identified in her order denying their motion to compel: there "are no allegations specific to" the host of additional healthcare entities plaintiffs say are at issue "asserting that those entities' deployment of the pixel resulted in the improper or unconsented-to transmission of personal health information to Meta." Dkt. 93 at 2. Plaintiffs are thus (still) not entitled to wide-ranging "discovery from Meta about *all* entities covered by HIPAA and/or CMIA that use the Meta pixel." *Id.* *Second*, the proposed amendment is prejudicial. If plaintiffs are allowed to amend their complaint, they will surely use it to attempt once again to seek broad discovery that Judge DeMarchi already held was "not reasonably directed to matters relevant to a claim or defense and [] not proportional to the needs of the case," *id.*, wasting Meta's and the Court's time and resources.

## I.     The Proposed Amendment Is Futile.

"[F]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Sepehry-Fard v. Dep't Stores Nat'l Bank*, 2013 WL 6574774, at *12 (N.D. Cal. Dec. 13, 2013) (Orrick, J.) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). A district court "does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *JW Gaming Dev., LLC v. James*, 2020 WL 353536, at *11 (N.D. Cal. Jan. 21, 2020) (Orrick, J.) (quoting *Bonin*, 59 F.3d at 845). Courts often refuse to allow amendment where it would not cure deficiencies previously identified. *See, e.g.*, *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1155 (N.D. Cal. 2010) (denying leave to amend where proposed amendment's "reframing of Plaintiffs' previous claims and its class definitions suffers from almost all of the same problems" as prior complaint).

Plaintiffs' proposed amendment is futile because it does not cure the defects Judge DeMarchi previously identified and thus does not change plaintiffs' legal position or entitlement to discovery in any way. As Judge DeMarchi held, plaintiffs are not entitled to discovery concerning all HIPAA- and CMIA-covered entities without factual allegations plausibly showing "those entities' deployment of the pixel resulted in the improper or unconsented-to transmission of personal health information to

- 4 -

Meta." Dkt. 93 at 2.  That holding accords with well-established discovery principles.  Indeed, other courts have required *evidence*—not just allegations—before authorizing classwide discovery that goes beyond the named plaintiffs' own claims.  *See, e.g.*, *Dittmar v. Costco Wholesale Corp.*, 2016 WL 7188231, at *2 (S.D. Cal. Dec. 12, 2016) ("Absent some factual basis for a plaintiff's claims that defendant's alleged wrongs are class-wide, plaintiffs are not entitled to class-wide discovery; and the plaintiff cannot rely on the bare allegations of the complaint to support class-wide discovery."); *Coleman v. Jenny Craig, Inc.*, 2013 WL 2896884, at *8–9 (S.D. Cal. June 12, 2013) (finding plaintiff "has not provided sufficient evidence to expand discovery beyond those Jenny Craig centers at which she worked," and collecting cases).  Plaintiffs offer neither evidence nor factual allegations.

As a quick glance at plaintiffs' proposed amended complaint reveals, plaintiffs have proposed only minor cosmetic changes purportedly expanding the definition of "covered entities" to include any entity covered by HIPAA or CMIA—without adding *factual* allegations that all such entities used the Meta Pixel improperly to send protected health information.  *See* Dkt. 96-1 (redlining proposed amendments).  Nor does plaintiffs' appended list of approximately 70 entities that allegedly used the Meta Pixel somewhere on their website suffice, because plaintiffs cannot simply "assume that because there is [Meta] source code somewhere on the health care providers' web properties, that automatically results in [Meta] intercepting any interaction the plaintiffs have had with that website."  *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 838 (N.D. Cal. 2024).  Healthcare providers' use of the Meta Pixel is perfectly lawful so long as they do not configure the Pixel *improperly*, and "what matters is where on the web property the source code exists"—*i.e.*, somewhere without any sensitive information like a "homepage," or somewhere potentially more sensitive like "an appointment scheduling page within a patient portal."  *Id.* at 839.  Thus, to support a claim of wrongdoing, plaintiffs must allege where pixel technology is configured on a website, how it operates on that healthcare provider's webpage(s), and what information it sent.  *See id.*  Plaintiffs' proposed amended complaint, like their initial complaint, does not speak to any of those questions for the HIPAA- and CMIA-covered entities they seek to sweep into the fold.  Nor does the proposed amended complaint include other factual allegations about those entities comparable to the ones that enabled plaintiffs' allegations about Cerebral to survive a motion to dismiss, such as their allegations about mental-health services or their allegations that users made

payments to Cerebral who in turn paid Meta. *See supra* 2 (describing bases for motion-to-dismiss order).[1]

In short, plaintiffs have asserted a broader class definition and have appended a list of entities that allegedly used the Meta Pixel, but they have not provided any allegations about these other entities or their alleged misuse of Meta's Pixel that would allow the Court to assess whether these entities configured their websites or collected data in a manner "substantially similar" to Cerebral's. *See Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *4–10 (N.D. Cal. Mar. 13, 2014) (Orrick, J.) (adopting substantial-similarity test for determining whether named plaintiffs may pursue claims based on products they did not buy). Here, there are no facts alleged that would enable the Court to even begin to assess whether the approximately 70 entities included in plaintiffs' list, let alone all HIPAA- and CMIA-covered entities, misused the Meta Pixel in a manner "substantially similar" to Cerebral. *Id.* at *8; *see also, e.g.*, *Eastman v. Quest Diagnostics Inc.*, 108 F. Supp. 3d 827, 832–33 (N.D. Cal. 2015) (Orrick, J.) (plaintiffs could not pursue claims on behalf of health plans where complaint lacked "facts from which [the Court] can conclude that the alleged injuries suffered by the named plaintiffs and health-plans are identical"). Because "determination of [plaintiffs'] claims" against these other entities "'depend[s] on [a] context-specific analysis, requiring information about the" websites and health data collected "that ha[s] not been presented to the court," plaintiffs' proposed amendment is futile. *Ang*, 2014 WL 1024182, at *8 (quoting *Trazo v. Nestlé USA, Inc.*, 2013 WL 4083218, at *13 (N.D. Cal. Aug. 9, 2013)).

**II.   The Proposed Amendment Is Prejudicial.**

For similar reasons, Meta would suffer prejudice if amendment were allowed. As Judge DeMarchi previously recognized, discovery concerning all HIPAA- and CMIA-covered entities "is not reasonably directed to matters relevant to a claim or defense and is not proportional to the needs of the case." Dkt. 93 at 2; *see also* Dec. 3, 2024 Hr'g Tr. at 19:8–9 (Judge DeMarchi noting "the Plaintiffs

---

[1] Plaintiffs' argument that amendment is not futile "because the Court has already held that Plaintiffs' claims for invasion of privacy, violation of the UCL, violation of the CLRA, and conversion may proceed," Mot. 5, is entirely unresponsive to the problems Judge DeMarchi identified. This Court's holding that plaintiffs' allegations *with respect to Cerebral* survived dismissal does not establish plaintiffs' ability to obtain discovery concerning an untold number of *other* entities without factual allegations about them.

are seeking much broader discovery than advertised to Judge Orrick"). Plaintiffs' proposed amendment is a thinly disguised attempt to use an amended complaint to get a second bite at the apple on overbroad and unduly burdensome discovery that Judge DeMarchi already denied. Requiring Meta (and the Court) to waste time and resources relitigating an issue that has already been resolved is inherently prejudicial.

This prejudice might be mitigated if this Court were to allow amendment and Judge DeMarchi nevertheless concluded—as she already has—that the lack of factual allegations about entities other than Cerebral means plaintiffs still are not entitled to discovery about those other entities. But this middle ground would still require Meta to relitigate issues that the Court already correctly resolved and to defend against claims that plaintiffs cannot bring as a matter of law. Moreover, Judge DeMarchi suggested at the hearing on plaintiffs' motion to compel that this issue of scope should be resolved by this Court. *See* Dec. 3, 2024 Hr'g Tr. at 26:8–10 ("I'm not sure there's a great—a great way to resolve this—this issue in a way that doesn't involve Judge Orrick, is kind of where I'm coming out."). To avoid wasting resources and leaving the parties back where they started, Meta respectfully submits that this Court should deny leave to amend, rather than granting leave while deferring the proper scope of discovery.

**CONCLUSION**

Plaintiffs' motion for leave to amend their complaint should be denied.

Dated: February 24, 2025

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
    Lauren R. Goldman

*Attorneys for Defendant Meta Platforms, Inc.*