1

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

3

4

5

6

7

8

9

| | |
|---|---|
| E.H. and C.S., *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> META PLATFORMS, INC., <br> Defendant. | Case No. 3:23-cv-04784-WHO <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR COMPLAINT** <br><br> Action Filed: September 18, 2023 <br><br> Honorable Judge William H. Orrick |

10

11

**INTRODUCTION**

12      Plaintiffs contend the scope of this case has been clear all along; it covers the claims of all

13   non-Facebook users whose sensitive, protected health information Meta stole for profit. Following

14   Judge DeMarchi's recent Motion to Compel ruling, however, Plaintiffs moved to amend their

15   Complaint to clarify the scope. Plaintiffs' Proposed First Amended Complaint (the "PFAC," ECF No.

16   96-1 Ex. A) removes any ambiguity identified by Judge DeMarchi. To defeat Plaintiffs' Motion to

17   Amend, Meta bears a heavy burden: it must show that the PFAC is futile or prejudicial despite the

18   extremely liberal standard of Rule 15, under which amendments are presumptively granted. *PNY*

19   *Techs., Inc. v. SanDisk Corp*., 2014 WL 294855, at \*4 (N.D. Cal. Jan. 27, 2014) (Orrick, J.). Meta

20   has not come close to meeting its burden.

21      *First*, the correct standard for evaluating Plaintiffs' Motion to Amend is Fed. R. Civ. P.

22   12(b)(6), and because the PFAC's additional factual allegations state a plausible claim for relief, the

23   amendment is proper. Meta never addresses this. Instead, Meta relies exclusively on Judge

24   DeMarchi's Rule 26 Motion to Compel Order (ECF No. 93) to argue that the PFAC is futile. Their

25   argument conflates a Rule 26 discovery order with the liberal amendment standard of Rule 15, which

26   are not the same. *See Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) (holding that an

27   amended complaint is futile only if "it would be immediately subject to dismissal." (internal

28

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR COMPLAINT
CASE NO. 3:23-CV-04784-WHO

1  quotations omitted)), *modified en banc on other grounds by* 681 F.3d 1041 (9th Cir. 2012). Judge

2  DeMarchi's ruling did *not* decide the legal sufficiency of the PFAC, and in fact, she consistently

3  recognized that the scope of the Complaint—as opposed to a discovery dispute—was a decision for

4  this Court.

5        Applying the appropriate standard, the PFAC is not futile. As this Court has already held (ECF

6  No. 56) Plaintiffs plausibly alleged all of their claims. Plaintiffs' PFAC also makes clear that this

7  conduct was not limited to Plaintiffs or to any one covered entity. Meta's widespread interceptions of

8  protected health information were consistent with the design and purpose of the Pixel, as well as

9  Meta's broader business strategy for indiscriminately collecting and monetizing every scrap of

10  personal information it could harvest. At the pleading stage, no further level of specificity is required.

11  *See Sepehry-Fard v. Dept. Stores Nat'l Bank*, 2013 WL 6574774, at *1-2 (N.D. Cal. Dec. 13, 2013)

12  (Orrick, J.) (explaining that "courts do not require 'heightened fact pleading of specifics'" at the

13  motion to dismiss stage).  In another attempt to insert class certification issues into the Rule 15

14  analysis, Meta also challenges Plaintiffs' standing to represent the class. This argument is both

15  unsupported by case law and premature.

16        *Second*, Meta argues that the PFAC causes prejudice in the form of additional discovery. But

17  amendments typically result in additional discovery, and that is not the type of prejudice that Rule 15

18  forbids. Rather, courts have consistently held that the mere prospect of additional discovery does not

19  constitute "prejudice" in the face of a timely amendment. *See e.g.*, *PNY Techs.*, 2014 WL 294855, at

20  *4 (citing *Tyco Thermal Controls LLC v. Redwood Indus.,* 2009 WL 4907512, at *3 (N.D. Cal. Dec.

21  14, 2009); *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 531 (N.D. Cal. 1989)). Rule 15 prejudice

22  is caused by surprise or an untimely amendment. *Dep't of Fair Emp. & Hous. v. Law Sch. Admission

23  Council, Inc.*, 2013 WL 485830, at *5-6 (N.D. Cal. Feb. 6, 2013). Neither situation is present here.

24        In short, Meta has not met its heavy burden. Instead, Meta's opposition illustrates its all-out

25  efforts to delay the progression of this case. It has been *over 18 months* since Plaintiffs filed their

26  class action complaint, and yet Meta has failed to produce a *single document* in discovery—even on

27  claims (such as Cerebral) that indisputably will go forward. Meta has filibustered, engaging in endless

28

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR COMPLAINT
CASE NO. 3:23-CV-04784-WHO

1   meet and confers. Before Judge DeMarchi, Meta raised for the first time standing arguments that only

2   this Court can decide. Now, in front of this Court, Meta insists that this Motion is about discovery

3   issues (it is not) that Judge DeMarchi already decided (she did not). Thus, Plaintiffs ask the Court to

4   grant their Motion to Amend, and order Meta to move forward forthwith.

5                                        **ARGUMENT**

6   **I.      Plaintiffs' Proposed First Amended Complaint is Not Futile.**

7          Meta first claims that the PFAC is futile. Meta bears the burden of establishing that assertion.

8   *PNY Techs.*, 2014 WL 294855, at *4. The "futility" analysis mirrors that of Rule 12(b)(6). *Nordyke*,

9   644 F.3d at 788 n.12. The court must "accept[] the plaintiff's allegations as true and draw[] all

10  reasonable inferences in favor of the plaintiff." *Codexis, Inc. v. EnzymeWorks, Inc.*, 2017 WL

11  4236860, at *4 (N.D. Cal. Sept. 25, 2017) (Orrick, J.). This is a "high standard," *Staley v. Gilead*

12  *Sciences*, 2021 WL 5906049, at *3 (N.D. Cal. Dec. 14, 2021), and thus, "[c]ourts rarely deny a motion

13  for leave to amend for reason of futility," particularly when discovery has not been completed, *Hynix*

14  *Semiconductor Inc. v. Toshiba Corp.*, 2006 WL 3093812, at *2 (N.D. Cal. Oct. 31, 2006).

15         **A.  The PFAC's new factual allegations state a claim.**

16         Despite this well-established law, Meta does not address Rule 12(b)(6). It claims instead that

17  the PFAC does not cure the deficiencies identified in Judge DeMarchi's discovery order. ECF No.102

18  ("Opp'n") at 4. But the scope of discovery is not at issue here. Judge DeMarchi evaluated a different

19  complaint under a different rule: Rule 26. Order at 2. Judge DeMarchi recognized this distinction and

20  was clear that she could not decide the scope of the Complaint under Rule 12(b)(6). *See* Dec. 3, 2024

21  Hr'g Tr. At 3:22-25 ("I'm not really sure that this dispute is about discovery. I think the dispute is,

22  principally, about what is Plaintiffs' complaint about, and I'm not sure this question is properly

23  addressed to me."), *and id.* at 12:11–15 ("I don't think this issue has ever been raised to Judge

24  Orrick. . . 'What is the scope?' It was not decided."); *see also id.* at 12:19-20 ("I don't think I'm the

25  right person to decide what the scope of the complaint is."). The scope of the PFAC is now properly

26  before this Court. Meta, however, has failed to even argue the correct standard. This alone dooms its

27

28

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR COMPLAINT
CASE NO. 3:23-CV-04784-WHO

1   position. *Curry Mgt. Corp. v. JP Morgan Chase Bank, NA*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022)

2   ("A party may be deemed to concede an argument by failing to address it in an opposition brief.").

3     Even if this were not true, Meta has not met its burden under Rules 15 and 12(b)(6). First,

4   Meta mischaracterizes the PFAC's new factual allegations. The original Complaint did not name

5   individual Covered Entities other than Cerebral and Monument. Order at 2. The PFAC cures this.

6   Appendix A to the PFAC lists the relevant "Covered Entities" and confirms that they "transmitted

7   sensitive and protected health information as set out in the Class Definition . . . ." PFAC ¶¶ 41-44.

8   The PFAC explains that the Pixel allows *all* Covered Entities—*not just Cerebral and Monument*—to

9   transmit protected information of unnamed Class Members. PFAC ¶¶ 1-9. The PFAC also alleges

10  that an average of 25 million transmissions every day triggered the system that Meta built to identify

11  (but not halt) transmissions of sensitive health information, underscoring the widespread nature of

12  Meta's interceptions from covered entities. PFAC ¶ 65. Clearly, all 25 million did not come from

13  Cerebral or Monument alone.

14    The PFAC also clarifies that the class definition includes only those non-Facebook users who

15  provided protected information to a Covered Entity. PFAC ¶ 11. Plaintiffs and putative class members

16  were not "simply surfing the web seeking information about routine or general healthcare topics."

17  Order Denying Mot. to Dismiss, ECF No. 56 at 4.[1] The Court previously recognized that these

18  allegations state a claim against Meta with respect to Cerebral. The PFAC's new allegations—which

19  the Court accepts as true—make clear that the Class is not limited to Cerebral. Plaintiffs' theory is

20  "facially plausible" and raises claims that are well above the speculative level. *Sepehry-Fard*, 2013

21  WL 6574774, at \*1-2. This is all that Rules 15 and 12(b)(6) require. *See id.*

22

23  ---

24  [1] Notably, Plaintiffs' counsel manually confirmed that the Meta Pixel on each Covered Entities'
website was transmitting protected information to Meta. They examined records of the Pixel's
25  transmissions from each website to verify that the information being transmitted showed that the user
was trying to schedule an appointment, created an account, filled out forms, or was otherwise
26  affirmatively seeking care. *See* PFAC ¶¶ 35, 39, 40, 43 (describing Meta Pixel interception of this
type of data from Covered Entities). They also verified that the information transmitted either itself
27  contained health information or constituted health information in conjunction with the services
provided by the covered entity. *See* Order Denying Mot. to Dismiss, ECF No. 56 at 4 ("[I]
28  information, some of which would ordinarily not be protected, plausibly becomes sensitive or private
considering that plaintiffs were seeking mental health services.").

1    Second, the PFAC need not—as Meta contends—allege how "all [Covered Entities] used the

2    Meta Pixel improperly to send protected health information." Opp'n at 5. Plaintiffs' complaint is

3    aimed at Meta's conduct, not that of any Covered Entity. *See* PFAC ¶ 11. Plaintiffs allege that Meta'

4    used its Pixel technology to become an unseen invader in their medical care, violating multiple state

5    and federal privacy and consumer protection laws. Meta repeatedly refers to "misuse" of the pixel by

6    third parties, but the only malfeasance at issue in this case is Meta's. Opp'n at 1, 6. Similarly, Meta

7    refers to Plaintiffs' claims against third parties, but the only entity Plaintiffs have brought claims

8    against is Meta. Opp'n at 6. Much though it might wish to, Meta cannot write itself out of Plaintiffs'

9    complaint.

10    The litany of factual information Meta seeks about unnamed class members' interactions with

11    Covered Entities is also not required at this stage of the case. Opp'n at 5. These are matters for

12    discovery and class certification. The Ninth Circuit has been clear that "a class action, when filed,

13    includes only the claims of the named plaintiff or plaintiffs," and the unnamed class members are

14    added to the case only after certification.[2] *Gibson v. Chrysler Corp.*, 261 F.3d 297 (9th Cir. 2001).

15    Even if that were not the case, Rule 12(b)(6) does not require "heightened fact pleading." *Sepehry*,

16    2013 WL 6574774, at *1.

17    Meta relies on *Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024), but *Doe I* changes

18    nothing. The *Doe I* court acknowledged that its decision might conflict with this Court's decision on

19    the *issue of intent*. *Id.* at 841. Meta, however, does not raise that issue in its Opposition. Nor has it

20    moved the Court to reconsider its previous ruling. *See also Doe v. Meta Platforms, Inc.*, 2024 WL

21    4375776, at *2 (N.D. Cal. Oct. 2, 2024) (Orrick, J.) (denying certification of interlocutory appeal on

22    the basis of *Doe I* and stating that the facts alleged about Meta's Pixel interceptions differed from

23    those alleged in *Doe I*). Even if it had, the Court got it right the first time. Issues of intent are ill-suited

24    for decisions under Rule 12(b)(6). "[Q]uestions of intent, should be left to the jury." *Harris v. Itzhaki*,

25

26    [2] For the same reason, it is entirely unsurprising that the Court's order on the motion to dismiss
specifically mentioned the Covered Entity used by both named plaintiffs—their individual claims
27    were the only claims at issue. Meta's insinuations to the contrary ignore both this procedural reality
and the fact that Meta's motion was expressly limited to the named plaintiffs. *see* ECF No. 34 at 2
28    (defining "Plaintiffs" as named Plaintiffs E.H. and C.S.).

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR COMPLAINT
CASE NO. 3:23-CV-04784-WHO

1   183 F.3d 1043, 1051 (9th Cir. 1999); *In re Twitter, Inc. Sec. Litig.*, 2020 WL 9073168, at \*3 (N.D.

2   Cal. Apr. 20, 2020) (same).

3        Nor does this case suffer from the deficiencies identified in *Doe I*. The court in *Doe I*, for

4   example, noted that the named plaintiffs used imprecise language about the type of information

5   transmitted to Google. 741 F. Supp. 3d at 839. The PFAC, however, contains precise allegations about

6   what information was transmitted. The PFAC also states that the Pixel transfers information including

7   "specific prescriptions, diagnoses, and symptoms . . . ." PFAC ¶ 1. It likewise states that this happened

8   to the named Plaintiffs. *Id.* ¶ 7. The PFAC further alleges that the Class includes only those whose

9   shared personally identifying information, healthcare questionnaire information, booking and billing

10  information, and other protected health information. *Id.* ¶ 11. *Compare infra, with* Doe I, 741 F. Supp.

11  3d at 839 ("the plaintiffs repeatedly allege that data sent to Google 'may include' specific information

12  like patient device identifiers or search terms.").

13       **B.  Plaintiffs have standing to bring claims on behalf of the class.**

14       Finally, Meta—without explicitly saying so—raises a standing argument. Meta claims that

15  the PFAC does not satisfy the "substantial similarity" test this Court adopted in *Ang v. Bimbo Bakeries*

16  *USA, Inc.*, 2014 WL 1024182, at \*8 (N.D. Cal. Mar. 13, 2014). Yet, even a cursory reading of *Ang*

17  reveals that the test is a poor fit here. There is only one product at issue in this case: the Meta Pixel.

18       But even if the test were applicable, Plaintiffs satisfy it. In *Ang*, the Court held that a class can

19  include different products (here different websites) so long "the type of claim and consumer injury

20  [are] substantially similar." 2014 WL 1024182, at \*8. In the context of class claims, the Court should

21  not "employ too narrow or technical an approach . . . [or] parse too finely . . . ." *Id.* at \*4 (quoting

22  *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v.*

23  *California*, 543 U.S. 499, 504–05 (2005)). So long as the "legal analysis of the claim[s]" is the same,

24  the test is satisfied. *Id.* at \*9. That is certainly true in this case. All of the claims of all putative class

25  members, as well as their injuries, are virtually identical. *Infra* page 4-5. The legal analysis from

26  Covered Entity to Covered Entity will not change anything about class members' claims as to Meta.

27  Additionally, the class members themselves have the same relationship to and injury from Meta that

28

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR COMPLAINT
CASE NO. 3:23-CV-04784-WHO

1   Plaintiffs do: hidden, unconsented invasion by Meta into their medical care. *Cf. Eastman v. Quest*

2   *Diagnostics Inc.*, 108 F. Supp. 3d 827, 833 (N.D. Cal. 2015) (Orrick, J.) (finding that individual

3   patient plaintiffs did not have standing to bring claims on behalf of corporation health care plans

4   because of the latter's distinctive relationship to the defendant). This satisfies the test. *See id.*

5          In any event, whether Plaintiffs' claims are typical of the Class is a question for class

6   certification, not this Rule 15 Motion. In the Ninth Circuit, courts may evaluate the legal distinctions

7   between the named Plaintiff and unnamed class members prior to certification when the named

8   plaintiffs raise claims under jurisdictions where they were not harmed. *In re Glumetza Antitrust Litig.*,

9   611 F. Supp. 3d 848, 866-67 (N.D. Cal. 2020). They do not, however, evaluate *factual* disjunctures

10  between the claims of the named plaintiff and unnamed class members until the Rule 23 stage.

11  *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015). "[T]he dissimilarity of circumstances

12  raised within the same claim [is] 'relevant only to class certification, not to standing.'" *Glumetza*, 611

13  F. Supp. 3d at 866 (quoting *Melendres*, 784 F.3d at 1257-58); *see also Nunez v. Saks Inc.*, 771 Fed.

14  Appx. 401 (9th Cir. 2019) (applying *Melendres* to violations of California consumer protection laws);

15  *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957 (9th Cir. 2019) (applying *Melendres* to constitutional

16  violations and violations of the Medicaid Act); *Kirola v. City and County of San Francisco*, 860 F.3d

17  1164 (9th Cir. 2017) (applying *Melendres* to violations of the Americans with Disabilities Act).

18  Instead, *before* class certification, "once the named plaintiff demonstrates her individual standing to

19  bring a claim, the standing inquiry is concluded." *Melendres*, 784 F.3d at 1262. This forecloses Meta's

20  claims that Plaintiffs must provide detailed allegations about unnamed class members at this stage.

21      **II.      The PFAC is Not Prejudicial.**

22          As with futility, Meta bears the burden of showing that amendment at this juncture would be

23  prejudicial. *Codexis*, 2017 WL 4236860, at \*3. "To overcome Rule 15(a)'s liberal policy with respect

24  to the amendment of pleadings a showing of prejudice must be substantial." *Stearns*, 763 F. Supp. 2d

25  at 1158. The relevant prejudice is typically surprise or untimeliness that robs a defendant of the

26  requisite time to mount a defense. When there is ample time and opportunity for discovery, there is

27  no prejudice. *Codexis,* 2017 WL 4236860, at \*2. Thus, as Plaintiffs noted in their opening papers,

28

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR COMPLAINT
CASE NO. 3:23-CV-04784-WHO

1   courts in the Ninth Circuit consistently reject claims of prejudice where discovery remains open and

2   the amendment is filed long before the court-ordered deadline for amendment. *See, e.g., PNY Techs.*,

3   2014 WL 294855, at \*5 ("SanDisk has a heavy burden of showing prejudice given that the motion to

4   amend the pleadings came with four months remaining for discovery and within the time period for

5   making a motion to amend."); *Khasin v. R.C. Bigelow*, 2015 WL 4104868, at \*3 (N. D. Cal. July 7,

6   2015) (finding no prejudice where "discovery is scheduled to remain open for nearly another year and

7   trial is approximately fifteen months away"). Because the current schedule allows for discovery until

8   September 11, 2025, and amendment until November 13, 2025, there is no prejudice.

9       Meta mounts no credible counterarguments otherwise. It first argues that because the PFAC

10  is futile, it would also prejudice them. But the circular logic of this argument does not establish

11  prejudice: as established *infra*, the PFAC is *not* futile, and the mere prospect of additional discovery

12  does not constitute "prejudice" in the face of a timely amendment. As courts have explained, the

13  prospect of additional discovery does "not constitute undue prejudice to the defendant" when an

14  amendment is timely. *Tyco Thermal Controls v. Redwood Indus.*, 2009 WL 4907512, at \*3 (N.D. Cal.

15  Dec. 14, 2009) ("Neither delay resulting from the proposed amendment nor the prospect of additional

16  discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice.").

17  Thus, in cases with strikingly similar timelines to this, the courts routinely allow amendments. *See,*

18  *e.g., PNY Techs.*, 2014 WL 294855, at \*4 (amendment allowed where "four months remain for fact

19  discovery; no written discovery has been propounded; and only a single foundational deposition has

20  been taken").

21                                          **CONCLUSION**

22      In sum, the Court should grant Plaintiffs' Motion to Amend.

23

24

25

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR COMPLAINT
CASE NO. 3:23-CV-04784-WHO

1   DATED: March 17, 2025

2

3   **MOTLEY RICE LLC**                          **ADAMSKI MOROSKI MADDEN**
                                                **CUMBERLAND & GREEN LLP**

4   _s/Abigail Burman_
    Previn Warren[*]                            JAMES M. WAGSTAFFE
    Abigail Burman[*]                           STEVEN J. ADAMSKI
5   401 9th Street NW Suite 630                 Mailing Address: PO Box 3835
    Washington DC 20004                         San Luis Obispo, CA 93403-3835
6   Tel: 202-386-9610                           Physical Address: 6633 Bay Laurel Pl.
    pwarren@motleyrice.com                      Avila Beach, CA 93424
7   aburman@motleyrice.com                      Telephone: (805) 543-0990
                                                wagstaffe@ammcglaw.com
8   Mathew Jasinski[*]                          adamski@ammcglaw.com
    One Corporate Center
9   20 Church St., 17th Floor
    Hartford, CT 06103
10  mjasinski@motleyrice.com

11  Lance Oliver*
    Max Gruetzmacher*
12  28 Bridgeside Blvd
    Mt. Pleasant, SC 29464
13  loliver@motleyrice.com
    mgruetzmacher@motleyrice.com

14
    [*]_APPEARANCE PRO HAC VICE_
15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 9 -