United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

E. H., et al.,

                    Plaintiffs,

          v.

META PLATFORMS, INC.,

                    Defendant.

Case No.  23-cv-04784-WHO (VKD)

**ORDER RE DECEMBER 3, 2025
DISCOVERY DISPUTE RE
CUSTODIANS AND DOCUMENT
REQUESTS**

Re: Dkt. No. 149

The parties ask the Court to resolve two categories of disputes: (1) whether plaintiffs may obtain discovery from Meta responsive to 12 disputed document requests as part of the supplemental discovery the presiding judge has permitted; and (2) whether Meta should be required to search the records of 57 custodians (40 existing *Healthcare* custodians, plus 17 new custodians) as part of this supplemental discovery. Dkt. No. 149.[1] The Court held a hearing on

---

[1] Plaintiffs move to seal the discovery letter brief and exhibits, in their entirety, on the ground that Meta claims the contents are confidential. Dkt. No. 150. In response, Meta requests sealing for a narrowed portion of the discovery letter (portions of page 5, line 1) and a portion of Exhibit B (portions of page 8, lines 19 and 20), stating that the subject information reveals non-public information about its confidential internal analyses and proprietary data storage system paths. *See* Dkt. No. 153. Meta does not request sealing for any portion of Exhibit A. *See id*. As plaintiffs' sealing motion relates to a discovery matter, the good cause standard applies. *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1098-99 (9th Cir.), *cert. denied sub nom FCA U.S. LLC v. Ctr. for Auto Safety*, 580 U.S. 815 (2016); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006). Plaintiffs' motion to seal Exhibit A is denied, as no one claims that document is confidential. Notwithstanding plaintiffs' claim that they had no choice, plaintiffs' motion to seal is otherwise denied, as their provisional sealing of the *entire* discovery letter brief and exhibits is unreasonable. Meta's request to seal portions of the letter brief at page 5, line 1 is denied, as Meta has not shown good cause to seal that information. Meta's request to seal portions of Exhibit B at page 8, lines 19 and 20 is granted. By **January 5, 2026**, plaintiffs shall file a public version of the discovery letter brief and Exhibit A, and a redacted version of Exhibit B, in compliance with this order. For future discovery matters, the Court expects that the parties to confer and coordinate about precisely what information should be sealed before such materials are filed with the Court.

these disputes on December 16, 2025. Dkt. No. 154. For the reasons explained on the record, this order addresses only the parties' dispute regarding plaintiffs' document requests. As set forth below, the parties' dispute regarding custodians is not ready for decision and requires further proceedings.

## I.    BACKGROUND

On April 7, 2025, the presiding judge issued an order granting plaintiffs' motion for leave to amend their complaint. Dkt. No. 113. In connection with that decision, the April 7 order provided the following direction regarding discovery in this case:

> **[T]he targeted discovery in this case shall follow the discovery being sought and produced in 22-cv-03580-WHO *In Re Meta Pixel Healthcare Litigation*.** Plaintiffs here shall agree to the existing protective order and discovery protocols entered in that related case. They shall be given full access to the discovery produced in that case.
>
> Meta has admitted that some of the data "associated" with Facebook users is different than the data "associated" with non-users. This Order contemplates that there will be some difference in what is ultimately discoverable in the two cases. Plaintiffs shall not seek additional document discovery until they have reviewed the productions in the related case. Once they have done so, they shall meet and confer with defendants on the scope of the remaining, necessary discovery. If the parties cannot agree, plaintiffs may then seek additional targeted discovery relevant to the non-Facebook user putative class upon a showing of good cause to Judge DeMarchi.

Dkt. No. 113 at 1-2 (emphasis in original).

At the time the April 7 order issued, plaintiffs had already served over 40 document requests. *See* Dkt. No. 150-4; *see also* Dkt. No. 144 at 4 n.4. Those requests were "held in abeyance" during production and review of discovery materials from the *Healthcare* case. Dkt. No. 116 at 2. On August 11, 2025, plaintiffs served an additional 75 document requests, for a total of 124 document requests seeking supplemental discovery. Dkt. No. 144 at 3; Dkt. No. 149 at 6. Plaintiffs have since withdrawn a number of those requests. Meta agreed to produce documents responsive to some of the remaining requests but has objected to many of them. Dkt. No. 144 at 3,

5, 6, 7, 8; Dkt. No. 149 at 6 n.5.

According to Meta, plaintiffs have received voluminous discovery—including documents, data, interrogatory answers, responses to requests for admissions, and deposition transcripts of Meta's witnesses—produced by Meta in the *Healthcare* case. Dkt. No. 149 at 6. Meta has agreed to search for additional documents in connection with some of plaintiffs' supplemental discovery requests, but the parties disagree about whether Meta should be required to produce documents responsive to the following document requests: RFPs 11-12, 45-46, 48,[2] 73-74, 80, 85, 90, and 98-99.

## II.    DISCUSSION

Per the April 7 order, the Court considers whether plaintiffs have shown good cause to obtain documents responsive to the disputed document requests, within the permitted scope of supplemental discovery—i.e. "targeted discovery relevant to the non-Facebook user putative class." Dkt. No. 113 at 2.

### A.    RFPs 11-12: Notices

By means of these RFPs, plaintiffs ask Meta to produce documents sufficient to identify all "Covered Entities,"[3] to whom Meta sent "notices" that the entities were sharing protected health information with Meta via the Pixel, including specifically all such notices Meta sent to Cerebral. Dkt. No. 149 at 9. Meta has agreed to produce notices, if any, sent to Cerebral and to all of named plaintiffs' other healthcare providers. *Id.* Plaintiffs argue that Meta should be required to search for and produce notices for all of the 69 entities listed in Appendix A to plaintiffs' amended complaint, or at least the 34 of those entities that are "online-only telehealth" providers. *Id.* at 4;

---

[2] Apparently, plaintiffs misnumbered the document requests in their first set of requests for production. At the hearing, the parties advised that what they refer to as "RFPs 11-12, 45-46, and 48" in the joint letter corresponds to RFPs 9-10, 43-44, and 46 in Exhibit A attached to the letter, and that the correct text of the disputed RFPs is reproduced in Meta's portion of the letter. *See* Dkt. No. 150-4; Dkt. No. 157 at 50:12-51:1; 54:23-55:9.

[3] Plaintiffs define "Covered Entities" here the same as they do in the first amended complaint: "[T]the Complaint refers to Health Insurance Portability and Accountability Act (HIPAA) covered entities and/or California Medical Information Act (CMIA) covered entities individually as a 'Covered Entity' and collectively refers to them as 'Covered Entities.' 'Covered Entities' includes but is not limited to the entities listed in Appendix A." Dkt. No. 115 at 1 n.1.

United States District Court
Northern District of California

1    Dkt. No. 157 at 44:9-11, 52:24-53:7.

2         Although it is not clear from the joint letter why plaintiffs seek this additional discovery,

3    given that Meta has already searched for and produced responsive "notices" sent to "Covered

4    Entities" as part of the *Healthcare* discovery production,[4] at the hearing plaintiffs explained that

5    they seek this discovery because none of the "Covered Entities" in the *Healthcare* production are

6    "telehealth only" providers, and they are concerned that Meta will take the position that telehealth

7    only providers differ in some material way from other "Covered Entities."  Plaintiffs say they will

8    have no way to rebut such an argument if it is made during class certification without this

9    discovery.  Dkt. No. 157 at 54:3-19.

10        The Court resolves this dispute as follows:  Meta must search its existing document

11   collection for the *Healthcare* case for the names of the 34 providers whom plaintiffs identify as

12   "telehealth only" in Appendix A, and must produce any responsive notices located in that search.

13        **B.    RFPs 45-46, 48: Non-public communications to non-users**

14        Plaintiffs acknowledge that Meta has already produced all public-facing communications

15   and statements about its collection of health information via the Pixel.  Dkt. No. 149 at 4, 10.

16   Nevertheless, by these RFPs plaintiffs seek "other, non-public communications that Meta sent to

17   the [n]amed [p]laintiffs and other non-users" of Facebook.  *Id.* at 4.  Meta objects that there is no

18   reasonable way to search for communications with non-users, who are generally unknown to

19   Meta, and that these document requests are neither "targeted" nor "necessary" to the claims of the

20   non-Facebook user putative class.  *Id.* at 10.

21        When questioned at the hearing, plaintiffs could not identify any basis for believing that

22   Meta has sent non-public communications to non-users about its collection of health information

23   via the Pixel.  Dkt. No. 157 at 56:6-57:3.  Rather, contrary to the argument presented in the joint

24   letter, plaintiffs explained at the hearing that they are most interested in Meta's *own internal*

25   *communications* about whether it believed non-users would understand their health information

26   was being collected, and *not* communications to non-users.  *Id.* at 56:24-57:3, 58:25-59:6; *see also*

27   _____

28   [4] Meta searched for notices sent to approximately 2,000 "Covered Entities" in the *Healthcare* case.
     Dkt. No. 157 at 53:2-4.

United States District Court
Northern District of California

1   *id.* 60:23-61:9.

2          The Court is disappointed that the parties did not discuss (or brief) the documents plaintiffs

3   now say they are most interested in—i.e. internal Meta communications—before submitting their

4   joint letter.  However, given the nature of the *Healthcare* production, the Court expects that

5   Meta's own internal communications, if any, about its data collection practices and about its

6   disclosure of those practices are included in that production.  Plaintiffs have not established good

7   cause to require Meta to conduct additional searches for internal communications specifically

8   about Meta's beliefs about what non-users understand about Meta's information collection

9   practices.

10         **C.      RFP 74: Lineage mapping project**

11         RFP 74 asks for "[a]ll Documents and Communications reflecting the proposal, execution,

12  outcome, and discussion of the H12019 lineage mapping project referred to in META-

13  NONUSER-001119120."  Dkt. No. 150-5 at 49.  As plaintiffs acknowledge, the lineage mapping

14  project was the subject of discovery in the *Healthcare* case.  Dkt. No. 149 at 5.  However, they

15  argue that because the *Healthcare* production includes only 16 documents regarding the planning

16  phase of the project and not its outcome, there must be additional responsive documents in Meta's

17  possession that have not yet been produced.  *Id.*  Meta responds that the *Healthcare* production

18  includes its responsive documents for the lineage mapping project, including its results.  *Id.* at 10.

19  In addition, Meta points out that it has also reproduced from the *Healthcare* production documents

20  responsive to many document requests seeking information about how Meta uses information

21  collected from the Pixel, and it should not be required to re-do that production for this case.  *Id.*

22  Nevertheless, at the hearing, Meta agreed to identify the Bates numbers for the portion of the

23  production *Healthcare* production that reflects the results of the lineage mapping project.  Dkt.

24  No. 157 at 61:24-62:17.  This should resolve the dispute regarding RFP 74.

25         **D.      RFP 80: Communications about non-user data only**

26         RFP 80 asks for "[a]ll Documents and Communications related to the retention and use of

27  Pixel Event Data and information derived from or inferred from Pixel Event Data outside of the

28  Meta's advertising analytics and targeting systems."  Dkt. No. 150-5 at 59.  Plaintiffs argue that

they require this additional discovery to support their conversion claim because "[t]he *Healthcare* discovery did not focus on non-users." Dkt. No. 149 at 5. Meta responds that it has "already agreed to search for and produce documents responsive to non-user plaintiffs' Requests 66, 71, 73, and 118—all of which concern the retention and/or use of non-user data." *Id.* at 11.

At the hearing, plaintiffs explained that they are not seeking "structured data" but rather email and other communications about how non-user data is used, and in particular how information inferred from non-user data is used. Dkt. No. 157 at 64:7-24. Meta responded that the *Healthcare* production did not distinguish between users and non-users in the production of structured data or communications about that data. *Id.* at 65:14-66:22. Plaintiffs expressed concern that the *Healthcare* production may have excluded communications specific to non-users on relevance grounds, and Meta agreed to investigate whether it could determine if such exclusion occurred. *Id.* at 68:25-69:8.

The Court resolves this dispute as follows: Meta shall investigate whether the *Healthcare* production excluded documents specific to non-users on relevance grounds, as it has agreed to do. Otherwise, given the production Meta has already made, or agreed to make, regarding the use and retention of non-user data, the Court finds plaintiffs have not established good cause to require Meta to conduct additional searches for email and other communications about non-user data only.

### E.    RFP 85: Documents and communications regarding Appendix A entities

RFP 85 asks for "[a]ll Documents and Communications reflecting conversations between Meta employees and the entities listed in Appendix A to the First Amended Complaint or third-parties acting on their behalf, or among Meta employees regarding those entities, including call and meeting notes." Dkt. No. 150-5 at 67. Plaintiffs only justification for seeking discovery of these documents and communications is that telehealth-only providers were part of a "different sales sub-vertical" than the "Covered Entities" that were the focus of discovery in the *Healthcare* case. Plaintiffs argue that because there are only 69 entities in Appendix A, the burden on Meta to search for all communications with or about them is minimal. Dkt. No. 149 at 5. Meta responds that RFP 85 seeks discovery that is overbroad and not proportional to the needs of the case, given that it would require Meta to produce documents reflecting any "conversation," regardless of the

United States District Court
Northern District of California

topic, with or about any of the 69 entities listed in Appendix A.  *Id.*  at 11.  In addition, Meta notes that it has already agreed to search for and produce, in response to RFP 86, communications regarding use of the Pixel between Meta and named plaintiffs' healthcare providers and five additional entities of plaintiffs' choosing.  *Id.*

Plaintiffs have not established good cause for discovery of all documents reflecting any conversation, regardless of subject matter, between a Meta employee and any provider listed in Appendix A, or among Meta employees about any such provider.  The request is simply too broad.  Moreover, because plaintiffs appear to have served narrower document requests more closely tied to the claims and defenses at issue in this case, the Court agrees with Meta that RFP 85 seeks additional discovery that is not appropriately targeted or necessary.

**F.      RFP 90: Advertising revenue form health technology companies**

RFP 90 asks for "[a]ll Documents and Communications related to the advertising revenue generated by health technology companies for Meta."  Dkt. No. 150-5 at 76.  Plaintiffs explain that this document request seeks information about the way Meta used and benefited from plaintiffs' data, and the "value of the data usage implicit in [ ] advertising."  Dkt. No. 149 at 5.  They argue that the *Healthcare* production includes only "topline revenue figures, not the related documents and communications," and RFP 90 is specific to telehealth-only (i.e. "health technology") providers.  *Id.*  Meta responds that RFP 90 seeks discovery that is overbroad and not proportional to the needs of the case.  Meta notes that it has separately agreed to product documents sufficient to show the revenue Meta received from the entities listed in Appendix A, as well as documents concerning revenue generated from, and the business value of, advertising to non-users.  *Id.* at 12.

As the Court explained at the hearing, RFP 90 is unreasonably broad.  It is no answer, as plaintiffs suggest, that the request can be narrowed by the application of search terms.  Plaintiffs have an obligation in the first instance to seek only "targeted discovery relevant to the non-Facebook user putative class."  *See* Dkt. No. 113 at 2.  RFP 90 is not targeted as required, and plaintiffs have not shown good cause for supplemental discovery of this scope.

United States District Court
Northern District of California

### G.    RFPs 98-99: Advertising Account Dashboard

These document requests ask for "[a]ll Documents and Communications related to the function, business value, and importance to [Meta or third parties] of the Advertising Account Dashboard." Dkt. No. 150-5 at 87, 89. Plaintiffs explain that the Advertising Account Dashboard is particularly important to their claims because it is one of the principal known uses of non-user data and a source of value for Meta. Dkt. No. 149 at 6; Dkt. No. 157 at 75:8-76:4, 79:4-23. Plaintiffs emphasize that they are seeking documents reflecting Meta's own internal assessment of the value and importance of the Advertising Account Dashboard to its business. Dkt. No. 157 at 76:5-16. At the hearing, Meta acknowledged that no search terms specific to the Advertising Account Dashboard were used to identify documents in the *Healthcare* production, but it argued that such documents likely would have been included in the *Healthcare* production anyway because Meta's analytics include both user and non-user data, and Meta produced copious information in the *Healthcare* case about the value and use of such data. *Id.* at 76:22-77:20, 80:4-81:3, 83:15-21.

The *Healthcare* production appears to have included documents regarding the use and value of both user and non-user data. It also appears to have included documents about the Advertising Account Dashboard. Thus, to the extent plaintiffs seek "all documents and communications" related to the value and importance of the dashboard, RFPs 98 and 99 are not targeted to the discovery plaintiffs need for this case. However, to the extent plaintiffs seek documents and communications specifically addressing the value of the Advertising Account Dashboard, and the value of non-user data to that dashboard, such discovery is targeted, and it is unclear whether Meta has already searched for and produced that material. The parties should discuss whether there are specific custodial sources likely to have responsive information not previously produced and attempt to resolve this dispute without further assistance from the Court.

## III.    FURTHER PROCEEDINGS

As discussed at the hearing, the Court expects that the guidance and direction provided above regarding the disputed document requests will assist the parties in resolving, or at least narrowing, their dispute regarding whether Meta should be required to collect and search the files

of additional custodians, and if so, which ones.  The parties must confer, keeping in mind the presiding judge's direction that plaintiffs' supplemental discovery must be "targeted" and "relevant to the non-Facebook user putative class."  Dkt. No. 113 at 2.  Plaintiffs have the burden of showing "good cause" for such discovery.  *Id.*

For any issues raised in the joint letter at Dkt. No. 149 that are not resolved by this order— in particular, the dispute regarding custodians—the parties may file a further joint discovery dispute letter after they have completed their discussions in view of this order.  The joint discovery dispute letter must conform to the requirement of Judge DeMarchi's Standing Order, and should be filed no later than **January 21, 2026**, unless the parties stipulate to a later date.

**IT IS SO ORDERED.**

Dated: December 23, 2025

Virginia K. DeMarchi
United States Magistrate Judge

United States District Court
Northern District of California

9